**DEPARTMENT OF the AIR FORCE, et al., Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**American Federation of Government Employees, Amicus Curiae on Behalf of Respondent.**

No. 84–3695.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 28, 1985.

Decided Oct. 25, 1985.

William Kanter, Lead Counsel, Mark B. Stern, argued, Civ. Div., Dept. of Justice, Washington, D.C., for petitioner.

Mitchell J. Notis, Deputy Gen. Counsel, Mark D. Roth, Gen. Counsel, American Federation of Government Employees, AFL–CIO, Washington, D.C., for American Federation of Government Employees, amicus curiae in support of respondent FLRA.

Ruth Peters, argued, Federal Labor Relations Authority, William R. Tobey, Lead Counsel, Washington, D.C., for respondent.

Before MERRITT and CONTIE, Circuit Judges, and RUBIN, Chief District Judge.*

CONTIE, Circuit Judge.

The United States Department of the Air Force, Air Force Logistics Command (AFLC), seeks review of a decision and order of the Federal Labor Relations Authority (FLRA or Authority) which found that the AFLC had committed an unfair labor practice in violation of §§ 7116(a)(1), (6) and (8) of the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.* The FLRA requests enforcement of its order requiring the AFLC to implement the terms of an interest arbitration award.[1] Judicial review of the order is taken pursuant to 5 U.S.C. §§ 7123(a) and (b). For the reasons that follow, we affirm the Authority's findings and order.

## I.

The Air Force Logistics Command and the American Federation of Government Employees (AFGE or Union) bargained to impasse in 1978. In October, 1978, the parties invoked the assistance of the Federal Mediation and Conciliation Service, which suggested that the parties submit their controversies to an arbitration panel rather than submitting the impasse issues to the Federal Services Impasse Panel (FSIP). The parties entered into a written agreement providing for a tripartite panel to arbitrate the disputed issues, and on October 12, 1978, the FSIP authorized the use of the outside interest arbitration.[2] The agreement provided in part:

5. The arbitration panel shall decide only issues which are negotiable. In the event of a dispute over negotiability, the arbitration panel shall not presently decide such issue, but shall retain jurisdiction pending determination of the negotiability of that issue.

6. The arbitration panel shall have sole discretion to decide questions of procedure.

. . . . .

9. The decision of the arbitration panel shall be final and binding on the parties, and further rights of appeal are hereby waived except that all articles must be in conformance with law and Executive Order.

The arbitration panel established by the agreement was to be composed of a mem-

---

* The Honorable Carl B. Rubin, Chief Judge, United States District Court for the Southern District of Ohio, sitting by designation.

1. The Authority's Decision and Order appears at *United States Air Force, Air Force Logistics Command, Wright-Patterson Air Force Base, Ohio 15 FLRA No. 27 (1984).*

2. Executive Order 11491, which governed federal sector labor-management relations at that time, authorized this alternative procedure for the resolution of an impasse. Executive Order 11491 § 17.

ber selected by each of the parties and a neutral chairman selected jointly by the parties.

In November, 1978, the parties met with the chairman of the panel. During those meetings, a dispute arose concerning how the panel would treat matters which the AFLC declared to be nonnegotiable but which were later determined to be negotiable.[3] The AFLC proposed that there should only be one panel hearing on such issues, held after all the determinations of negotiability had been made, instead of multiple hearings held after each determination. The AFLC set out what it believed to be the parties' agreement regarding the dispute in a letter to the chairman of the panel.

Subsequently, the parties settled their differences on all issues which they had agreed were negotiable. On December 29, 1978, the AFGE requested a negotiability determination by the Department of Defense concerning the issues which the AFLC had declared to be nonnegotiable. The Department of Defense determined that some of the issues were negotiable, and the Union requested that the arbitration panel schedule a hearing to resolve the merits of those issues.[4] The AFLC opposed the requested hearing as being contrary to the alleged agreement to await the final determination of negotiability of all issues before holding any hearings. On October 24, 1979, the arbitration panel rejected the AFLC's claim and granted the Union's request for a hearing. The panel found that it had jurisdiction to hear "those issues found by the Department of Defense

to be negotiable" prior to the final determination of negotiability of all issues. The panel stated that the parties had not reached any agreement to the contrary. The panel scheduled the hearing on the merits of the negotiable matters for December 3, 1979 and then rescheduled it for February 4, 1980.

On November 14, 1979, the AFLC notified the panel chairman that because of the panel's decision to hold the hearing the AFLC was rescinding the arbitration agreement. The AFGE then requested the FSIP to reaffirm the panel's authority to hold the hearings. On December 18, 1979 the FSIP denied the request, stating that the case was closed by the FSIP on October 12, 1978 when it authorized the outside arbitration.

On January 31, 1980, the Authority issued its decision on the remaining negotiability issues. *American Federation of Government Employees, AFL–CIO and Air Force Logistics Command, Wright-Patterson Air Force Base, Ohio,* 2 FLRA 603 (1980).[5] The AFLC had previously reasserted in a January 28 letter to the arbitration panel that it would neither participate in the February panel hearing, nor consider itself bound by any decisions made at the hearing. Nonetheless, the hearing was held as scheduled without AFLC participation, and the arbitration panel issued its award on May 20, 1980. No exceptions to that decision were filed with the FLRA.[6]

On December 1, 1980, the Union filed an unfair labor practice action based on the AFLC's failure to implement the arbitra-

---

**3.** An initial declaration of nonnegotiability could be reversed or affirmed by the Department of Defense, the administrative head of the AFLC. The Union could then appeal to the Authority, or its predecessor the Federal Labor Relations Council, concerning any matters determined to be nonnegotiable by the agency head. Executive Order 11491, § 11(c).

**4.** The Union also sought review by the Authority of the negotiability of the matters determined to be nonnegotiable by the Department of Defense.

**5.** The AFLC appealed the Authority's determination of negotiability to the D.C. Circuit Court of

Appeals, which upheld the Authority's decisions. *Department of Defense v. Federal Labor Relations Authority,* 659 F.2d 1140, 1161 (D.C.Cir. 1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

**6.** However, on June 16, 1980, the AFGE moved the Authority to enforce the arbitration award. The motion was denied on December 10, 1980 on the basis that the award was not an "order" which could be enforced by the Authority under § 7123(b). *Department of the Air Force, Air Force Logistics Command and American Federation of Government Employees, AFL–CIO,* 4 FLRA 717, 719 (1980).

tion award. Following an administrative hearing, the presiding administrative law judge found that the AFLC had committed an unfair labor practice by failing to implement the award. The FLRA subsequently adopted the findings of the ALJ, with some modifications not at issue in this appeal.[7]

The Authority agreed with the ALJ that the refusal to implement the arbitration award constituted a violation of §§ 7116(a)(1), (6) and (8) of the Federal Service Labor-Management Relations Statute.[8] The FLRA also agreed with the ALJ that the charge had been timely filed within six months of the alleged conduct as required by 5 U.S.C. § 7118(a)(4)(A). This conclusion was based on the findings that a failure to implement an award could not constitute an unfair labor practice until the award is final and binding, and that the award in this case did not become final until June 19, 1980, when the 30-day period specified in 5 U.S.C. § 7122 for filing exceptions to such awards had expired. Accordingly, the six-month limitation period did not begin to run until that date. The Authority also agreed with the ALJ's finding that the AFLC could not collaterally attack the jurisdiction of the arbitration panel in the unfair labor practice proceeding. The ALJ had determined that the AFLC was required under 5 U.S.C. § 7122 to raise any and all defenses by filing exceptions within 30 days of the issuance of the award, and, having failed to do so, the AFLC was barred from asserting its defenses in the subsequent proceeding.

In its order, the FLRA required the AFLC to incorporate the terms of the arbitration award in its collective bargaining agreement with the AFGE. The incorporation was to be retroactive to the date the award became final and binding. The AFLC seeks review of this order, raising two issues. The AFLC claims that the unfair labor practice action was time-barred under 5 U.S.C. § 7118(a)(4)(A). In the alternative, the AFLC asserts that even if the action was timely, the Authority erred in finding that 5 U.S.C. § 7122 precluded the AFLC from challenging the validity of the arbitration award in the unfair labor practice proceeding. We find both of these arguments unpersuasive.

## II.

The Federal Service Labor-Management Relations Statute, Title VII of the Civil Service Reform Act of 1978 (Act), Pub.L. 95–454, 92 Stat. 1111, 5 U.S.C. § 7101 *et seq.*, created a statutory scheme governing labor relations between federal agencies and their employees. The Act created the Federal Labor Relations Authority, a three-member independent and bipartisan body within the Executive Branch. 5 U.S.C. § 7104. The Authority's function in the public sector is analogous to the role of the National Labor Relations Board in the private sector. *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 92–93, 104 S.Ct. 439, 442, 78 L.Ed.2d 195 (1983); *United States Air Force v. Federal Labor Relations Authority,* 681 F.2d 466, 466 (6th Cir.1982). Among other functions, the Authority is empowered to adjudicate unfair labor practice complaints. 5 U.S.C. § 7105(a)(2)(G).

■ Our standard of review of decisions of the Authority is narrow. *See, United States Air Force,* 681 F.2d at 467. Section 7123(c) of the Act provides that judicial

---

**7.** The Authority's decision also resolved unfair labor practice issues in a second case, Case No. 5–CA–455, which had been consolidated with the present case. The AFLC did not contest the Authority's decision and order as to Case No. 5–CA–455.

**8.** Section 7116 provides in pertinent part:
 (a) For the purpose of this chapter, it shall be an unfair labor practice for an agency—

 (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

 · · · · ·

 (6) to fail or refuse to cooperate in impasse procedures and impasse decisions as required by this chapter;

 · · · · ·

 (8) to otherwise fail or refuse to comply with any provision of this chapter.
5 U.S.C. § 7116 (1980).

review "shall be on the record in accordance with [5 U.S.C. § 706]." Section 706, enacted as part of the Administrative Procedure Act, states that agency action should be reversed only if it is "arbitrary, capricious, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Thus, we examine the Authority's decision to determine whether it is arbitrary or capricious.

■ The Supreme Court has also provided guidance concerning our standard of review. As is the case with the National Labor Relations Board, the Court has stated that the FLRA "is entitled to considerable deference when it exercises its 'special function of applying the general provisions of the Act to the complexities' of federal labor relations." *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), quoting *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1149, 10 L.Ed.2d 308 (1963). However, that "'deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress.'" *Id.*, quoting *American Ship Building Co. v. NLRB*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965). Accordingly, this court will "uphold reasonable and defensible constructions" of the Act by the Authority, but will reject decisions which are "'inconsistent with a statutory mandate or that frustrate the congressional policy underlying [the Act].'" *Id.*, quoting *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965). Mindful of our role in reviewing the Authority's decision, we turn to the arguments presented by the AFLC.

### III.

■ The AFLC claims that the Union's unfair labor practice action was time-

barred pursuant to 5 U.S.C. § 7118(a)(4)(A). That section provides in pertinent part:

> [N]o complaint shall be issued based on any alleged unfair labor practice which occurred more than six months before the filing of the charge with the Authority.

The alleged unfair labor practice which was the basis of the present action was the AFLC's failure to implement the arbitration award in violation of 5 U.S.C. § 7122(b). Section 7122(b), as codified in 1980,[9] provides:

> If no exception to an arbitrator's award is filed under subsection (a) of this section during the 30-day period beginning on the date of such award, the award shall be final and binding. An agency shall take the actions required by an arbitrator's final award. The award may include the payment of back pay (as provided in § 5596 of this title).

Thus, unless exceptions are filed, an arbitrator's award becomes final after 30 days. *See, United States Soldiers' and Airmen's Home, Washington, D.C. v. American Federation of Government Employees, Local 3090, AFL–CIO*, 15 FLRA No. 26, 3 (1984). A subsequent failure or refusal to implement such an award has been held to constitute a failure to comply with § 7122(b) in violation of 5 U.S.C. §§ 7116(a)(1) and (a)(8). *United States Army Health Clinic, Fort Ritchie, Maryland*, 9 FLRA 935, 935–36 (1982). However, since an agency is only required under § 7122(b) to "take the actions required by an arbitrator's *final* award," (emphasis added) the FLRA has also held that a failure to implement an award pending resolution of timely filed exceptions is not an unfair labor practice. *United States Soldiers' and Airmen's Home, Washington, D.C. v. American Federation of Government Employees*, 15 FLRA No. 26 (1984). This distinction clearly indicates that the limitation period for filing an unfair labor

---

9. The statute was amended in 1984, substituting the phrase "beginning on the date the award is served on the party" for "beginning on the date of such award." Pub.L. 98–224, § 4, 98 Stat. 48.

Because the award in this case was issued in 1980, the version of the statute effective at that time governs.

practice charge based on a refusal to implement an arbitration award begins to run on the date an award becomes final pursuant to § 7122(b).

■ In the present case, the arbitrator's award was issued on May 20, 1980. No exceptions to the award were filed within 30-day statutory period. Accordingly, it appears that the award became final on June 19, 1980, and the six-month limitation period began to run on that date. Since the filing of the unfair labor practice charge on December 1, 1980 was within six months of June 19, 1980, the unfair labor practice action was not time-barred if the award indeed became final on that date.

■ The AFLC claims that the award was final and binding when it was issued on May 20, 1980. For support, the AFLC relies on a clause in the original arbitration agreement which states:

9. The decision of the arbitration panel shall be final and binding on the parties, and further rights of appeal are hereby waived except that all articles must be in conformance with law and Executive Order.

The AFLC interprets this clause as a complete waiver of all rights of appeal, including the right to file exceptions under § 7122(a). The AFLC concludes that since it was precluded from taking exceptions to the award, the award was final and binding on the date of issuance. If the AFLC is correct, the unfair labor practice charge was untimely since it was filed more than six months from May 20, 1980.

We find that the FLRA did not err in holding that the award became final on June 19, 1980 instead of May 20, 1980. Even though under the arbitration agreement the arbitrator's award was to be "final and binding" and the parties waived "further rights of appeal," some rights of appeal were expressly reserved in the agreement. The agreement states that the parties waived their rights of appeal *except* for claims that the arbitrator's decision was not in "conformance with law and Executive

Order." This proviso is analogous to § 7122(a)(1), which provides the right to take exception to an award "because it is contrary to any law, rule or regulation." 5 U.S.C. § 7122(a)(1). Accordingly, the clause did not effectuate a complete waiver of all rights of appeal and the award was not final upon issuance. As long as any exception might be raised the 30-day period of § 7122 must expire before an award becomes final and the six-month limitation period begins to run. We hold that the arbitrator's award did not become final until June 19, 1980 and the unfair labor practice action was filed in a timely fashion on December 1, 1980.

### IV.

■ The AFLC also argues that the FLRA erred in holding that 5 U.S.C. § 7122 precluded the AFLC from collaterally challenging the validity of the arbitration award in the unfair labor practice proceeding. The AFLC claims that § 7122 is inapplicable in the present case because of the "savings clause" of the Civil Service Reform Act. Section 902(b) of the Act states:

No provision of this Act shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeal shall be taken therefrom as if this Act had not been enacted.

Pub.L. No. 95–454 § 902(b), 92 Stat. 1111, 1224 (1978); codified as a note to 5 U.S.C. § 1101 (1985). This "savings clause" operates to ensure that administrative proceedings pending before government agencies on January 11, 1979, the effective date of the Act, are resolved under pre-Act law.[10] *See, e.g., Beals v. Merit Systems Protection Board,* 636 F.2d 169, 171 (7th Cir. 1980); *Phillips v. Merit Systems Protection Board,* 620 F.2d 217, 219 (10th Cir. 1980); *Glenn v. Merit Systems Protection Board,* 616 F.2d 270, 271 (6th Cir.1980); *Ellis v. Merit Systems Protection Board,* 613 F.2d 49, 50–51 (3d Cir.1980); *Kyle v.*

---

10. In this case, the applicable pre-Act law was Executive Order 11491.

*Interstate Commerce Commission,* 609 F.2d 540, 541 (D.C.Cir.1980).

The AFLC claims that the arbitration was such an administrative proceeding pending on January 11, 1979. First, the AFLC notes that the parties originally commenced proceedings before the Federal Services Impasse Panel in 1978. Second, the AFLC asserts that since the FSIP authorized the arbitration, the arbitration effectively retained the status of a proceeding before the FSIP. Based on this assertion, the AFLC concludes that it qualifies under the "savings clause" and that § 7122(b) should not have been applied to bar its defenses in the unfair labor practice proceeding.

We cannot agree that the arbitration was a proceeding pending before an administrative agency on January 11, 1979 within the meaning of the "savings clause." We note that the Merit Systems Protection Board has promulgated a regulation construing the clause. That regulation provides in part:

> "Pending" is considered to encompass *existing agency proceedings,* and appeals ... that were subject to judicial review or under judicial review on January 11, 1979, the date on which the Act became effective.

5 C.F.R. § 1201.191(b) (1981) (emphasis added). This indicates, and courts have held, that "pending" proceedings are those which are actually before an agency. *Cf., Denton v. Merit Systems Protection Board,* 768 F.2d 422 (D.C.Cir.1985).

There was no proceeding actually pending on January 11, 1979 in the present case. On October 12, 1978, when the FSIP authorized the parties to use outside arbitration to resolve their impasse, the proceeding was removed from the jurisdiction of the

FSIP. The case was accordingly no longer pending before any government agency. The FSIP itself determined that it did not have jurisdiction, as indicated by its reply to the Union's request that the FSIP reaffirm the arbitration panel's authority. In denying that request, the FSIP stated that "[t]he case was closed" before it when it exercised its "limited function" of authorizing outside arbitration. The FSIP further noted that it had never reasserted jurisdiction over the matter.

Due to the FSIP's own clear characterization of the action as no longer pending before it, the AFLC cannot successfully argue that the FSIP had in effect retained jurisdiction and that the action was a pending administrative proceeding under the "savings clause." [11] Accordingly, we find that the AFLC is not insulated from the application of 5 U.S.C. § 7122 by the "savings clause."

Since § 7122 applies here, we now consider whether that provision precluded the AFLC from asserting its defenses in the unfair labor practice proceeding. That is, we must determine whether § 7122 imposes an exhaustion requirement on parties challenging arbitration awards under the Act, requiring them to file exceptions to preserve their claims. We believe it does.

The Act provides parties to arbitration with the means to object to or challenge arbitration awards. Section 7122(a) states that "either party to arbitration under [the Act] may file with the Authority an exception to any arbitrator's award pursuant to the arbitration." 5 U.S.C. § 7122(a). As noted previously § 7122(b) adds that if no exception is filed "during the 30-day period beginning on the date the award is served on the party, the award becomes final and

---

**11.** We also recognize that the FLRA has held that grievance arbitrations pending on the effective date of the Act are not "administrative proceedings" within the meaning of the "savings clause." *See American Federation of Government Employees and Department of Health, Education and Welfare,* 1 FLRA 1083, 1083–84

(1979). While we find it unnecessary to hold that grievance arbitrations and interest arbitrations such as the one here must be treated the same under the Act, we believe the cases involving grievance arbitrations support the conclusion that the present arbitration was not a pend-

binding" [12] and that the responsible agency "shall take the actions required by an arbitrator's final award." Since an award becomes final and must be implemented if the parties fail to file an exception within the required period, the necessary implication is that a party can no longer challenge the award by any means. It has become final for all purposes. Accordingly, in order to preserve defenses against an arbitration award under the Act, a party must file exceptions to the award. Failure to do so is considered a failure to exhaust available remedies, thereby precluding collateral attack on an award in a subsequent proceeding.

The AFLC failed to preserve its defenses here since it did not file an exception within the 30-day period. Therefore, the FLRA correctly found that § 7122 barred the AFLC from challenging the validity of the award in the unfair labor practice proceeding. Since the arbitrator's award could not be disputed, the AFLC was bound by its terms and was required by § 7122(b) to "take the actions" required by the award. The AFLC's failure to do so was a violation of that provision, which constituted an unfair labor practice under 5 U.S.C. § 7116(a)(8). We therefore conclude that the Authority did not err in finding that the AFLC had committed an unfair labor practice.

Accordingly, the Authority's findings and order are AFFIRMED.

---

ing administrative proceeding under the "savings clause."

**12.** Again, we note that when the provision was amended in 1984, the phrase "beginning on the date the award is served on the party" was substituted for "beginning on the date of such award."