**DEPARTMENT OF the NAVY, Navy Public Works Center, Norfolk, Virginia, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 86–3870.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1987.

Decided April 2, 1987.

Jeffrica Janeice Jenkins (Marc Richman, Dept. of Justice, Richard K. Willard, Asst. Atty. Gen., Matthew J. Wheeler, Dept. of the Navy, Washington, D.C., on brief), for petitioner.

William Eugene Persina, Deputy Sol. (Ruth E. Peters, Sol., Jill A. Griffin, Federal Labor Relations Authority, Washington, D.C., on brief), for respondent.

Before RUSSELL and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

WILKINSON, Circuit Judge:

The Navy Public Works Center (the agency) challenges a decision of the Federal Labor Relations Authority on the negotiability of a union proposal which would give federal employees the option of working an additional hour on the day of the spring conversion to daylight savings time. The FLRA held that the proposal was negotiable and ordered the agency to bargain. The agency seeks review of this decision, and the Authority has cross-petitioned for enforcement. We set aside the decision of the FLRA and deny enforcement of its order.

## I.

The power plant of the Navy Public Works Center at Norfolk, Virginia, maintains eight steam boilers which operate twenty-four hours a day, seven days a week. The Center employs four boiler plant operators and an oiler to tend the boilers during each shift. The duties of the boiler plant operators include controlling the water level and steam pressure, and testing the boiler water. The oiler is responsible for lubricating and maintaining the boilers' equipment, both steam and electric, which he checks hourly. These employees are represented for purposes of collective bargaining by the Tidewater Employees Metal Trades Council (the union), an intervenor in this case.

Each year, the spring conversion to daylight savings time shortens one shift by one hour. The agency's practice has been to allow the five affected employees to use one hour of annual leave time to make up the lost hour of pay. In 1985, during negotiations for a new collective bargaining agreement between the union and the Navy Public Works Center, the union proposed that:

Unit employees working on a shift at the time of conversion to daylight savings time will have the option of using one hour of annual leave or working an additional hour as a method of maintaining their regular eight hour shift.

The agency refused to bargain, claiming that the proposal constituted a non-nego-

tiable issue under the Federal Service Labor-Management Relations Act, 5 U.S.C. §§ 7101–35. According to the agency, the proposal interfered with its reserved right under § 7106(a)(2)(B) of the statute which states that "nothing in this chapter shall affect the authority of any management official of any agency ... to assign work." *

The agency also claimed that the proposal interfered with its elective right under § 7106(b)(1) which provides that "nothing in this section shall preclude any agency and any labor organization from negotiating (1) at the election of the agency, on the numbers, types and grades of employees or positions assigned to any organizational subdivision work project, or tour of duty." The union appealed the agency's claim of non-negotiability to the Authority. The Authority held that the proposal was negotiable and ordered the agency to bargain.

## II.

■ The union proposal in this case attempts to provide an alternative to the current practice of requiring employees to use annual leave time to make up the hour of pay lost during the daylight savings time conversion. While some proposals addressing this problem might be negotiable, the form of this particular proposal—affording employees the option of working an extra hour—contravenes management's right to assign work, 5 U.S.C. § 7106(a)(2)(B).

The Federal Service Labor-Management Relations Act seeks to balance the collective bargaining rights of federal employees with the responsibility of federal agencies to manage effectively the operations of government. 5 U.S.C. § 7101(b). The Act imposes upon federal agencies a broad duty to bargain in good faith about conditions of employment, including "personnel policies, practices and matters, whether established by rule, regulation or otherwise, affecting working conditions." 5 U.S.C.

§ 7103(a)(14). *See FLRA v. Office of Personnel Management,* 778 F.2d 844, 845 (D.C.Cir.1985). This duty to bargain is, however, subject to important statutory exceptions. Section 7106(a) of the statute removes select areas from the scope of mandatory bargaining and reserves them exclusively to management discretion. Under § 7106(a)(2)(B), federal agencies have the right to decide what work to assign, to whom it will be assigned, and when it will be completed. *National Treasury Employees Union v. FLRA,* 691 F.2d 553 (D.C. Cir.1982).

In this case, the Authority held that the union's proposal did not interfere with the agency's right "to assign work." It reasoned that the agency originally assigned the five employees to perform eight hours worth of work during their regular eight hour shift. Under the union proposal as interpreted by the Authority, the agency's right to assign work remains intact because the five employees merely gained the option of performing an additional hour of the kind of work already assigned to them by management.

The Authority's findings, however, proceed from the faulty premise that the agency assigned these employees eight hours of work on the day of the daylight savings time conversion. On that day, the shift is shortened by an hour. It lasts for only seven hours, and the employees are assigned only seven hours of work. The optional eighth hour proposed by the union is actually the first hour of the next shift, and the agency assigned the work to be performed during that hour to the employees on that shift. The union proposal allowing the five employees the option of working an eighth hour would thus force the agency to alter its work assignments.

The Authority and the union contend that there is often enough work during the hour of overlap for both shifts to perform. They argue that the agency failed to show a lack of work for the five employees dur-

---

* Management's right to assign work under § 7106(a)(2)(B) is subject to subsection (b) which states that "nothing in this section shall preclude any agency and any labor organization from negotiating ... (2) procedures which

management officials of the agency will observe in exercising any authority under this section." 5 U.S.C. § 7106(b)(2). Neither the Authority nor the union contend that the proposal is procedural.

ing the optional hour. Such a showing, however, is not necessary under the statute. The proposal would require the agency to provide an additional hour's worth of work every year. The agency might be required to create make-work and assign it to the five employees during the extra hour. It might be forced to reassign some of the next shift's work to employees of the previous shift. In any case, the proposal interferes with the agency's right under § 7106(a)(2)(B) to assign work as it sees fit. Contrary to the Authority's holding, the proposal is non-negotiable.

### III.

The agency also challenges the Authority's finding that the union proposal does not interfere with its elective right under § 7106(b)(1) to determine the number of employees on a particular job or project. The Authority found that the proposal did not "on its face explicitly relate to the numbers, types and grades of employees or positions assigned to a tour of duty." It also determined that the proposal was not directly or integrally related to the number of employees assigned to a shift. *See American Federation of Government Employees Local 2875 and Dept. of Commerce,* 5 FLRA 441, 444–45 (1981). That conclusion is plainly incorrect.

The proposal does not explicitly mention the numbers, types, or grades of employees, but it requires two shifts to overlap for one hour. The agency has determined that only five employees are needed to perform the work to be done during that hour. Because the union's proposal requires ten employees to be present when only five are deemed necessary, it substantially interferes with the agency's right under § 7106(b)(1) to determine the number of persons assigned to do the work.

The Authority characterizes the dispute in this case as a "minor, once-a-year adjustment" in the quitting time of five employees. It argues that such trivial adjustments in starting and quitting times are negotiable subjects of bargaining. Here again the Authority misses the mark. This dispute reaches far beyond the five employees involved here. It may affect thousands of federal employees who work in round-the-clock operations. Petitioner notes that "federal building guards, prison employees, border police, security personnel, air traffic controllers, and civilian personnel" employed by the armed services and federal health care facilities are potentially affected by the Authority's ruling. *See FLRA v. Office of Personnel Management,* 778 F.2d 844, 847 (D.C.Cir.1985) (unfair labor practice for a federal agency to refuse to negotiate on a proposal that the FLRA has ruled negotiable in another context). The proposal of the union represents more than a *de minimis* infringement on a right protected by the statute. It cannot be a subject of mandatory bargaining.

### IV.

We are mindful that Congress established the Federal Labor Relations Authority to supervise the collective bargaining process under the Act. Deference is due its interpretation of the statute. *American Federation of Government Employees v. FLRA,* 778 F.2d 850, 856 (D.C.Cir. 1985); *Department of the Air Force v. FLRA,* 775 F.2d 727, 731 (6th Cir.1985). This court may ask only whether its decision is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. §§ 7123(c), 706(2)(A).

We may not, however, blind ourselves to administrative decisions that frustrate congressional intent. *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983); *U.S. Army Engineer Center v. FLRA,* 762 F.2d 409, 414 (4th Cir.1985). Here, the proposal which the Authority found negotiable may require agencies to assign work already performed, to devise make-work, or to assign no work at all. While petitioner attacks that proposal as legalizing, for the first time, "featherbedding in the federal service," such an accusation is beside the point. Suffice it to say that the proposal has everything to do with the assignment of work, and that is something which Congress left to management.

We therefore set aside the Authority's decision and deny the cross-application for enforcement of its order.

