**UNITED STATES NAVAL ORDNANCE STATION, LOUISVILLE, KENTUCKY, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 86–3123.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 19, 1987.

Decided May 12, 1987.

**546**

William Kanter, Attorney, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., Jeffrey Clair (argued), for petitioner.

Ruth Peters, Office of the Solicitor, Washington, D.C., Steven H. Svartz, Deputy Sol. William R. Tobey, Jill A. Griffin, Elsa D. Newman (argued), for respondent.

Before KEITH, KRUPANSKY and GUY, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

The United States Naval Ordnance Station (Navy or Agency) seeks review of a decision and order of the Federal Labor Relations Authority (FLRA or Authority) concerning a federal agency's duty to bargain under the Federal Service Labor-Management Relations Act, 5 U.S.C. §§ 7101–7135. The FLRA requests enforcement of its order requiring the Navy to bargain. For the reasons that follow, we order enforcement of the FLRA's order.

During negotiation of a collective bargaining agreement, Local Lodge 830, International Association of Machinist and Aerospace Workers (Union), submitted to the Navy the following proposals:

9. a. Immediately following the effective date of the Agreement and continuing throughout the life of the Agreement, all bargaining unit employees will be assigned to one regular first-line supervisor which will constitute his/her group. When it becomes necessary to assign an employee from one group to another group, volunteers will be sought using service computation date (seniority) with the most senior given the opportunity to volunteer first. In the absence of volunteers the assignment will be made using the inverse order of seniority, (SCD), subject to paragraph c. below.

b. (1) Qualified volunteers will be given first preference for the transfer. If there are more than one qualified volunteer(s) than required those qualified volunteers having the highest seniority, by service computation date, will be given first preference. Where there are less qualified volunteers than required assignment will be made by assigning those having least seniority, by service computation date, from among the qualified non-volunteers.[1]

c. It is agreed and understood that the employee volunteering and/or assigned must have the ability to perform the work assignment in a reasonable manner consistent with the character of work. Exceptions to this section shall be made only when the character of the work dictates the assignment of specific employees having special skills not possessed by any other employee in the group, Cost Center or job rating. These exceptions will be discussed with the Shop Steward in advance

---

1. Other pertinent sections of this proposal stated:

b. It is agreed and understood that assignment of work is a function vested in the Employer. In this regard the parties agree to establish a system of transfer of employees from one Cost Center to another which will assure the efficiency of operation and maintain morale among the employees. To the extent possible the following system will be utilized: [b(1) follows].

The Agency alleged during negotiations that these proposals were outside its statutory duty to bargain. Specifically, the Agency contended that the proposals unlawfully interfered with management's right to assign work as set forth in 5 U.S.C. § 7106(a):

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency . . .

(2) in accordance with applicable laws—

(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted. . . .

The Union appealed the Agency's allegations of nonnegotiability to the FLRA,[2] contending that the proposal simply set forth a permissible procedure for the exercise of management rights pursuant to subsection (b) of section 7106:

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating . . .

(2) procedures which management officials of the agency will observe in exercising any authority under this section. . . .

The Authority held that the Navy must bargain over the disputed proposals. *Lo-cal Lodge 830, International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. U.S. Naval Ordnance Station, Louisville, Ky.*, 20 FLRA 848, 850 (1985). The Authority found that these proposals did not seek to prescribe the qualifications and skills necessary to perform a particular work assignment; "[r]ather, they merely set forth a procedure the Agency will use when selecting among employees previously determined by management to be qualified to perform the work required by a reassignment." *Id.* The FLRA took note of section 9(c), referenced in the last sentence of section 9(a), which specifically stated that volunteers "must have the ability to perform the work assignment in a reasonable manner consistent with the character of work," and that exceptions to the requirement that volunteers be sought would be made when the character of work required specific employees with special skills. Consequently, the Authority concluded that the proposals did not interfere with management's rights under section 7106(a)(2)(A) and (B) to assign employees and work, but instead, constituted a negotiable procedure within the meaning of section 7106(b)(2). *Id.*

 Our standard of review of decisions of the FLRA is narrow.[3] *Dept. of Air Force v. Fed. Labor Relations Auth.*, 775 F.2d 727, 731 (6th Cir.1985). Section 7123(c) of the Act provides that judicial review

of FLRA decisions "shall be on the record in accordance with section 706 of [Title V]." 5 U.S.C. § 7123(c). Section

---

of the decision being made when possible or at the earliest possible time.

**2.** Section 7117(c)(1) provides: "Except in any case to which subsection (b) of this section applies, if any agency involved in collective bargaining with an exclusive representative alleges that the duty to bargain in good faith does not extend to any matter, the exclusive representative may appeal the allegation to the Authority in accordance with the provisions of this subsection." The FLRA is required to decide the negotiability issue at the earliest possible date, issuing a written decision containing specific reasons for sustaining or setting aside the agency's allegation of nonnegotiability. *Id.* at 7117(c)(6). The FLRA's decision addresses only the negotia-bility of the union proposal. It neither considers the merits of the proposal nor orders the agency to agree to it. If the proposal is found negotiable, the Authority holds only that the agency must bargain in good faith upon the union's request.

**3.** The FLRA's function in the public sector is analogous to the role of the National Labor Relations Board in the private sector. *Bureau of Alcohol, Tobacco and Firearms v. Fed. Labor Relations Auth.*, 464 U.S. 89, 92–93, 104 S.Ct. 439, 441–42, 78 L.Ed.2d 195 (1983). Among other functions, the Authority is empowered to adjudicate unfair labor practice complaints. 5 U.S.C. § 7105(a)(2)(G).

706, in turn, declares that agency action shall be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706f(2)(A). This section has been interpreted on countless occasions as requiring the court to give deference to an agency's interpretation of its enabling statute, especially "when the administrative practice at stake 'involves a contemporaneous construction of a statute by the [agency] charged with the responsibility of setting its machinery in motion, of making parts work efficiently and smoothly while they are yet untried and new'".... We are, therefore, normally "bound by the 'principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong.'"

*United States Air Force v. Fed. Labor Relations Auth.,* 681 F.2d 466, 467 (6th Cir.1982) (quoting *National Federation of Federal Employees v. Fed. Labor Relations Auth.,* 652 F.2d 191, 193 (D.C.Cir. 1981)).

Like other areas of the law where the distinction is made, the line between procedure and substance is not always clear. As noted in *Dept. of Defense v. Fed. Labor Relations Auth.,* 659 F.2d 1140, 1151 (D.C. Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982), "[u]nion proposals establishing 'procedures' for employee selection illustrate the uncertain boundary between the categories." *Id. Dept. of Defense* is particularly instructive in this regard, because there the court affirmed the FLRA's findings upholding one proposal and striking down other proposals concerning the assignment of employees.

*Dept. of Defense* Proposal III provided that unless the employer decided to use competitive procedures, temporary assign-

ments would be made on the basis of seniority.[4] The Authority recognized that the right to make assignments encompassed more than the narrow right to decide whether or not to assign that particular employee identified by some agreed set of procedures, noting that:

> Under section 7106(a)(2)(A) of the Statute, the agency retains discretion as to the personnel requirements of the work of the position, i.e., the qualifications and skills needed to do the work, as well as such job-related individual characteristics as judgment and reliability. Therefore, the right to assign an employee to a position includes the discretion to determine which employee will be assigned.

659 F.2d at 1148. Nevertheless, the FLRA found Proposal III to be negotiable because it authorized competitive selection procedures. The court explained:

> As defined in the *Federal Personnel Manual,* competitive procedures preserve "management's right to select or not select from among a group of best qualified candidates." According to the FLRA, this reservation of management discretion brought the union proposal within the statutory duty to bargain: "Only if the agency chooses not to use competitive procedures must it select [an] individual on the basis of seniority. Because Union Proposal III preserves in this manner the agency's discretion to select, the proposal does not directly interfere with the agency's basic right to assign employees under section 7106(a)(2)(A) of the Statute."

659 F.2d at 1148–49 (footnotes omitted).

The proposals which were held nonnegotiable, Proposals IV, V, VI, and VII, required management to make certain employee assignments on the basis of seniority.[5] Proposal IV would have compelled the

---

**4.** Proposal III stated:

Unless the employer decides to use competitive procedures as outlined in Article—(Promotion), temporary assignment to higher or same grade/different duty positions shall be offered to qualified and available employees with requisite skills on the basis of seniority within the lowest organizational segment. If senior employees decline and it is necessary

to detail an employee, the least senior employee shall be assigned.

**5.** The Proposals stated:

*Union Proposal IV*
*Section 3. Details to Lower Graded Positions*
Details to lower grade positions will be rotated among qualified and available employees in reverse order of seniority.

Agency to rotate "details" to lower grade positions among qualified and available employees in inverse order of seniority. Proposal V dealt with "loans" of employees to meet temporary or emergency needs outside their usual areas of employment and would have likewise dictated selection of the least senior employees with requisite skills. Proposal VI mandated seniority as a selection criterion for temporary assignments outside the bargaining unit where conditions were less than that provided by the contract. And Proposal VII would have forced the Agency, in the absence of a volunteer for permanent reassignment from one duty station to another, to select the person to be assigned on an inverse seniority basis.

The FLRA upheld the Agency's claim of nonnegotiability with regard to each of these proposals because it concluded that they infringed management's right to make personnel assignments protected under section 7106(a). The court repeated the FLRA's reasoning:

> The crucial failure of Proposals IV, V, VI, and VII, in the Authority's view, lay in their *elimination* of agency "discretion" in making assignments. "Discretion," it found, was "an essential part" of the package of rights reserved to management under Section 7106(a). "In thus compelling the selection of a particular individual for * * * assignment," the FLRA held, Union Proposals IV, V, VI, and VII "each directly interfere[d] with" a reserved right of management.

*Id.* at 1150 (emphasis added).

The court of appeals approved of the FLRA's distinction, stating:

Union Proposals IV, V, VI, and VII would each have compelled selection of a particular individual, based on seniority, at least in some instances. Once the agency had "determined the particular qualifications and skills needed to perform the work of the position to which the employee will be assigned, and identified the employees in the unit who meet those requirements and would be available for assignment, selection from among the employees so identified of the particular employee who will be assigned must be on the basis of seniority." * * Union Proposal III was subjected to an identical analysis. It, however, was held negotiable because it reserved to the agency the option of using "competitive procedures" to make its selection. As defined in the Federal Personnel Manual, "competitive procedures" retain the agency's right to "select or not select from among a group of best qualified candidates." To the Authority, this reserved discretion made a crucial difference....

*Id.* at 1161.

In other words, those proposals that compelled the selection of a particular individual, thus entirely eliminating the Agency's discretion to make individual judgments, directly interfered with the right of the Agency to assign employees. At the same time, the proposal which preserved management's right to select or not select from among a group of best qualified candidates did not impermissibly interfere with management's discretion.

The FLRA relied on *Department of Defense* when it approved language similar to

*Union Proposal V*
Section 4. Loans
B. Selection of employees for loans will be equitably rotated among qualified and available employees with requisite skills in inverse order of seniority.
*Union Proposal VI*
Section 5. Temporary Assignments Outside the Bargaining Unit
B. Where conditions are less at the receiving location than is provided for by this contract, the employee's wishes to decline such assignment will be considered. Selection for such assignments will be equitably rotated in accordance with Section [3] of this Article.

*Union Proposal VII*
ARTICLE 37 MISCELLANEOUS
*Section Mobility*
Prior to invoking the employment mobility requirement, the employer will seek volunteers from among employees of the same title, series and grade. If there are no volunteers, and the employer is required to unilaterally transfer employees within the unit, the employee with the least amount of seniority shall be selected first. The remaining employees shall be transferred in ascending seniority order.
659 F.2d at 1149 n. 54 and n. 55, 1150 n. 56 and n. 57.

the latter proposal in *Laborers International Union of North America, AFL–CIO, Local 1276 v. Veterans Administration, National Cemetery Officer, San Francisco, California,* 9 FLRA 703 (1982).[6] The FLRA stated:

> The right to assign employees which is reserved to management under section 7106(a)(2)(A) of the Statute encompasses management's discretion to establish the qualifications necessary to perform the duties generally assigned to the position and to determine whether an employee meets those qualifications ... Similarly, management's right to assign work pursuant to section 7106(a)(2)(B) encompasses discretion to establish the particular qualifications and skills needed to perform the work to be done, and to exercise judgment in determining whether a particular employee meets those qualifications. Thus, when management determines that only one employee possesses the requisite qualifications to do certain work, section 7106(a)(2)(B) reserves to management the right to assign the work to that particular employee ... Where, however, in management's judgment, two or more employees are equally qualified and capable of performing the work, the selection of any one of those employees to perform the work would be consistent with management's exercise of its discretion. Under such circumstances, the procedures by which employees previously judged by management to be equally qualified will be selected to perform the work is negotiable....

*Id.* at 706.

The Authority found the proposals at issue here to be of the same effect as those in *National Cemetery;* that is, it determined that the proposals merely set forth a procedure the Agency would use when selecting among employees previously determined by management to be qualified to perform the work required by a reassignment. The FLRA particularly noted section 9(c), providing that volunteers "must have the ability to perform the work assignment in a reasonable manner consistent with the character of work." 20 FLRA at 850. Most significantly, the FLRA noted that an exception to the requirement that volunteers be sought would be made when the character of the work required specific employees with specific skills.

■ While acknowledging that the proposals leave management with an unfettered right to establish the qualifications required of an assignment and to determine which employees possess those qualifications, the Agency complains that if management were to determine that an

---

**6.** The proposals in question in *National Cemetery* provided:

*Provision 1*

Section 7. The Employer agrees that, to the extent consistent with work requirements, every possible effort will be made to detail employee[s] to higher level duties in the following manner:

a. When making assignments to details for both thirty (30) days or less and in excess of thirty (30) days, the Employer will select only qualified (by Office of Personnel Management Standards) employees in the nearest grade to the position to be filled. When two (2) or more employees are equally well qualified and capable of performing the detail work in the most expeditious and efficient manner, the Employer agrees that the employee assigned shall be the employee with the greatest Federal employment service (based on service computation date).

b. Employees detailed to higher level duties on an intermittent basis shall be qualified and will be selected on the basis of section 7a above. When such an intermittent detail is used and the aggregate number of days detailed exceeds thirty (30) days during a period of 120 calendar days beginning with the first day of detail, the employee will be temporarily promoted to the higher grade on the 31st day of detail for the projected number of days to be actually worked in excess of 30 days but not to exceed 120 days. Time records for this purpose will be kept by the Director of National Cemetery.

*Provision 2*

Section 9. The Employer agrees that:

a. When it becomes necessary to assign an employee to lower graded work which has been determined by the Employer to be unusually dirty or arduous and when there are two (2) or more employees who are equally qualified and capable of performing the work in the most expeditious and efficient manner, the Employer agrees that the employee assigned shall be the employee in the nearest grade to the work to be performed with the least Federal employment service (based on service computation date).

employee was not in fact qualified, its decision could arguably be disputed in an arbitration proceeding. In what is apparently a worst case scenario, the Agency then contends that an arbitrator might substitute his or her judgment for management's exclusive authority to determine employee qualifications.

While admittedly this situation or countless others could somehow result in an improper decision by an arbitrator in some imaginary proceeding, we prefer to base our decision on the law as it now stands. The FLRA has consistently held that arbitrators may not substitute their judgment for that of management in the exercise of its reserved rights. *Professional Air Traffic Controllers Organization Union and Federal Aviation Administration Agency*, 5 FLRA 763 (1981). If, therefore, such an occurrence should come to pass, a remedy exists. *See* 5 U.S.C. § 7105(a)(2)(H) and § 7122(a).

■ The Agency also contends that the proposals would not allow management to consider individual characteristics such as judgment and reliability in determining whether an employee is suitable for a particular assignment. The Agency contends that the term "qualifications" is ambiguous in this regard. We disagree. While it is true that in different contexts the term "qualifications" could conceivably have different meanings, the FLRA has held in the context to which we are referring that job requirements are determined on an individual basis, and that the Agency is permitted to consider "job-related individual characteristics" such as judgment and reliability. *Dept. of Defense*, 659 F.2d at 1160. Accordingly, whether "qualifications" might have some other meaning in another context is irrelevant in light of this holding.

■ The Agency also complains that the proposals would deprive management of the ability to assign employees based on reasons other than qualifications. For instance, the Agency contends that it might wish to reward past performance by extending a new employment opportunity. Likewise, the Agency argues that it may wish a particular employee to gain new experience in the job. While it does not appear that the Agency made this specific argument before the FLRA, we would simply note that the proposals in question provide that the proposed system would be followed "to the extent possible." Moreover, they specifically acknowledge that the assignment of work is a function vested in the employer.

■ Finally, the Agency argues that, unlike *National Cemetery*, the proposals here would simply allow management to identify a pool of minimally qualified employees and, thereafter, management would be bound to assign by seniority. Again, we disagree. Like *National Cemetery*, the Authority has interpreted the instant proposals to mean that management has full discretion to determine the skills and qualifications necessary to perform a particular work assignment and that these proposals merely provide a procedure by which the Agency will select among those volunteers it identifies as equally qualified for the assignment. Accordingly, the Authority is bound by that interpretation. To the extent the Agency now argues that the proposals mean something else, its argument is without merit.[7]

Accordingly, the order of the FLRA will be enforced.

KRUPANSKY, Circuit Judge, dissenting.

Because I cannot concur with the majority's conclusion that the bargaining propos-

---

7. We recognize that the proposals at issue here are not as clearly worded as those set forth in *National Cemetery*. However, the Authority has vigorously argued on appeal that their interpretation is the same as in *National Cemetery;* that is, that management has full discretion to determine the skills and qualifications necessary to perform a particular work assignment and that these proposals merely provide a procedure by which the Agency will select from those volunteers it identifies as equally qualified. Our holding today affirms that interpretation. At the same time, there is nothing to prevent the parties from changing this language during negotiations. Likewise, our opinion does not reflect on the merits of these proposals and, of course, does not mandate adoption of these proposals or their specific language.

als here at issue were negotiable under 5 U.S.C. § 7106, I must respectfully dissent. Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. § 7101 *et seq.*, describes a federal government agency's duty to bargain with its employees' collective bargaining representative. 5 U.S.C. § 7106 provides, in pertinent part:

(a) Subject to subsection (b) of this section, *nothing in this chapter shall affect the authority of any management official of any agency —*

\* \* \* \* \* \*

(2) in accordance with applicable laws—

(A) *to* hire, *assign,* direct, layoff, and retain *employees in the agency,* or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

(B) *to assign work,* to make determinations with respect to contracting out, *and to determine the personnel by which agency operations shall be conducted;*

(C) *with respect to filling positions, to make selections for appointments from—*

(i) *among properly ranked and certified candidates for promotion; or*

(ii) *any other appropriate source;*

\* \* \* \* \* \*

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

\* \* \* \* \* \*

(2) *procedures which management officials of the agency will observe in exercising any authority under this section....*

(emphasis added).

The Federal Labor Relations Authority (FLRA) interpreted the controversial proposals here at issue as limiting the Navy's authority to merely defining the qualifications and skills required to perform the duties of an existing position vacancy and thereafter mechanically reassigning identified qualified personnel to fill the vacancy in the order of their seniority, thereby foreclosing the Navy from selecting, in the exercise of its discretion, the most qualified employee from the available pool for assignment to the existing vacancy.[1] The FLRA, as well as the majority of this panel, has concluded that these proposals "merely set forth a procedure the [Navy] will use when selecting among employees previously determined by management to be qualified to perform the work required by reassignment." *Local Lodge 830, Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. United States Naval Ordnance Station, Louisville, Ky.,* 20 FLRA 848, 850 (1985). I cannot agree.

In *Department of Defense v. Federal Labor Relations Auth.,* 659 F.2d 1140 (D.C.Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982), the District of Columbia Circuit concluded that proposals, which were indistinguishable from those in the instant case, were nonnegotiable under § 7106. The virtually iden-

1. Specifically, the union's proposals addressed interdepartmental or intergroup transfers to fill existing job vacancies within the Navy's operations at the Naval Ordnance Station at Louisville, Kentucky. The disputed portions of the proposals provided:

*Section 9* WORK ASSIGNMENTS

a. \* \* \* When it becomes necessary to assign an employee from one group to another group, volunteers will be sought using service computation date (seniority) with the most senior given the opportunity to volunteer first. In the absence of volunteers the assignment will be made using the inverse order of seniority, (SCD), subject to paragraph c. below.

b. \* \* \* (1) Qualified volunteers will be given first preference for the transfer. If there are more than one qualified volunteer(s) than

required those qualified volunteers having the highest seniority, by service computation date, will be given first preference. Where there are less qualified volunteers than required assignment will be made by assigning those having least seniority, by service computation date, from among the qualified nonvolunteers.

These controversial proposals would require the Navy to seek volunteers for transfer or assignment to job vacancies, and thereafter to mechanically transfer or assign the most senior qualified volunteer. In reverse, if there were no qualified volunteers for less desirable job vacancies, or fewer qualified volunteers than necessary to fill the vacancies, then under those circumstances the Navy would be required to transfer the least senior qualified nonvolunteer.

tical proposals submitted by the union in that case, limited the agency to specify the qualifications for a particular work assignment and to mechanically assign qualified employees solely upon seniority.[2] The court, adopting the FLRA's determination that the proposals were *nonnegotiable,* concluded that the proposals would have "directly interfered" with management's right to assign employees under § 7106(a):

> Five of the seven union proposals at issue ... involve procedures that would have conditioned certain job assignments at least partly on an employee's seniority. These proposals obviously implicate substantive concerns. *They identify a substantive criterion—namely, length of employment—on the basis of which personnel assignments would be made.*
>
> \* \* \* \* \* \*
>
> The FLRA's decisions on the seniority proposals before it followed logically from its determination that Section 7106(a) protected the agency's right to exercise discretion at the conclusion of procedures to test and quantify employee qualifications. Union Proposals IV, V, VI, and VII would each have compelled selection of a particular individual, based on seniority, at least in some instances. *Once the agency had "determined the particular qualifications and skills needed to perform the work of the position to which the employee will be assigned, and identified the employees in the unit who meet those requirements and would be available for assignment, selection from among the employees so identified of the particular employee who will be assigned must be on the basis of seniority."* The Authority held the proposals nonnegotiable on this ba-

sis. "In \* \* \* compelling the selection of a particular individual for temporary assignment to another position"—and thus removing the agency's discretion to make individual judgments based on the judgment and reliability of particular persons—the proposals "directly interfere[d] with the right of the agency to assign employees."

*Id.* at 1159–61 (emphasis added) (footnotes omitted). Although the proposals in *Department of Defense* did not encroach upon the agency's discretion to "determine[ ] the particular qualifications and skills needed to perform the work of the position" and to "identif[y] the employees in the unit who [met] those requirements," *Id.* at 1160–61, the court nevertheless concluded that they impermissibly interfered with the agency's right under § 7106(a) to assign its employees. The nonnegotiability of the proposals therein derived from the fact that "[t]hey identif[ied] a substantive criterion—namely, length of employment—on the basis of which personnel assignments would be made." *Id.* at 1159. "[T]o specify any criterion, however reasonable, is to invade management's exclusive statutory preserve." *National Treasury Employees Union v. Federal Labor Relations Auth.,* 767 F.2d 1315, 1317 (9th Cir.1985).[3]

Because the bargaining proposals submitted by the union in this case specified a substantive criterion, i.e. seniority, by which the Navy would be required to make personnel assignments, I cannot agree that they delineated merely procedures which the Navy would observe in exercising its reserved right to assign employees under § 7106. The specification of seniority as a criterion for the assignment of employees

---

**2.** For example, union proposal number IV in that case provided that "[d]etails to lower grade positions will be rotated among *qualified and available* employees *in reverse order of seniority.*" 659 F.2d at 1149 n. 54 (emphasis added). Union proposal V provided that "[s]election of employees for loans will be equitably rotated among *qualified and available employees with requisite skills in inverse order of seniority.*" 659 F.2d at 1149 n. 55 (emphasis added). The *Department of Defense* proposals are set forth in full in the majority opinion at n. 5.

**3.** The *Department of Defense* court upheld the FLRA's determination that another proposal, which would have permitted use of "competitive procedures" in making employee assignments in lieu of assignment by seniority, was bargainable. Competitive procedures "retain the agency's right to 'select or not select from among a group of best qualified candidates.'" 659 F.2d at 1161 (citations omitted). The proposals in this case do not contain such a provision which preserves the Navy's discretion.

removed the proposals from the realm of negotiability. Accordingly, I must respectfully dissent from the majority's decision to enforce the FLRA's order.