**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, LOCAL 1336, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 86–1851.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1987.

Decided Sept. 28, 1987.

---

Joseph F. Henderson, Washington, D.C., for petitioner.

Elsa D. Newman, Washington, D.C., for respondent.

Before LAY, Chief Judge, ARNOLD and WOLLMAN, Circuit Judges.

ARNOLD, Circuit Judge.

This is a petition for review of a decision of the Federal Labor Relations Authority styled *Department of Health and Human Services, Social Security Administration, Baltimore, Maryland and American Federation of Government Employees, AFL–CIO*, 21 FLRA No. 92 (May 12, 1986). The question presented is whether a certain proposal made to the Department of Health and Human Services by a union representing certain of its employees was negotiable, so that the employer was legally obligated to bargain with the union about it. The FLRA (Authority) held that the proposal was not negotiable, and we affirm.

I.

The Social Security Administration is a part of the Department of Health and Human Services. The Administration has an installation in Kansas City, Missouri, known as the Mid-America Program Service Center (Center). The Center's employees, or most of them, are assigned to one of two buildings, the Federal Office Building (FOB) and the Mid-Town Office Building (MTOB). For various reasons, some of the employees consider the FOB a more desirable assignment. The MTOB is about 15 to 20 minutes from the FOB by bus, and it does not have cafeteria facilities, a credit union, or close-in all-day parking. Before the dispute giving rise to this case arose, the employer followed the following practice in deciding where to assign employees. When employees were promoted to identical positions at the two work locations, positions to be filled at the same time, the employer would rank them by grade level and time in grade.

Higher graded employees would be given their preference of work location, using seniority as a tie-breaking factor if neces-sary. Thereafter, other employees would also be given their preference, based upon their grade level and time in grade, if there were vacancies at the work location selected by the employee. Employees who declined the only available work location would not receive a promotion.

In 1983, the Center decided to institute a new assignment policy. It proposed that in the future building location assignments would be made on the basis of organizational needs and the employer's assessment of individual employees' talents. The use of employee preference and seniority as primary work-location-assignment criteria would be discontinued. The American Federation of Government Employees, AFL–CIO, Local 1336 (the Union), collective-bargaining representative for employees of the Center, opposed this proposal. The Union made the following proposal instead:

We are herein submitting the following proposal in order to resolve our current impasse. This proposal constitutes *Union Proposal No. 6:*

When simultaneously filling identical positions, at more than one building location, the following procedure will be used:

(1) Each employee selected for promotion to one of the identical positions, will indicate his/her preference of building locations to be assigned.

(2) Should the above procedure fail to produce the desired staffing need at each location, selected employees with the earliest service computation dates will be afforded a choice of available building locations.

Thus, under the Union's proposal, employee preference would be the first criterion used in making assignments, and seniority would be used thereafter in the event that employee preference did not fill all of the available positions at both buildings.

The Center objected to this proposal and took the position that it was a nonnegotiable attempt to encroach upon management rights. Paragraph (2) of the proposal, quoted above, was the particular focus of this objection. Following the Center's re-

fusal to bargain on the basis of its position that the Union's proposal was nonnegotiable, Region Seven of the FLRA, upon the filing of a charge by the Union, filed an unfair-labor-practice complaint, alleging that the employer had acted unlawfully in refusing to bargain about the Union's proposal. An Administrative Law Judge (ALJ)[1] held for the Center. In his view, the Union's proposal did impermissibly infringe on management rights and therefore, under provisions of law that we shall shortly discuss, was not a proper subject of collective bargaining, or at least not a subject upon which the Union could compel the employer to bargain. On review of the ALJ, the FLRA affirmed, and this petition for review followed.

## II.

The governing statute is the Federal Service Labor-Management Relations Statute, as amended, 5 U.S.C. §§ 7101–35 (1982 & Supp.III.1985). The governing provision of the statute is § 7106, which reads in pertinent part as follows:

§ 7106. Management rights

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—

\* \* \* \* \* \*

(2) in accordance with applicable laws—

(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;

(C) with respect to filling positions, to make selections for appointments from—

(i) among properly ranked and certified candidates for promotion; or

(ii) any other appropriate source; and

(D) to take whatever actions may be necessary to carry out the agency mission during emergencies.

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

\* \* \* \* \* \*

(2) procedures which management officials of the agency will observe in exercising any authority under this section. . . .

The Center contends, in brief, that selection of employees to fill positions at the two buildings in question is part of its prerogative to assign employees and work. The Union, on the other hand, stresses that subsection (a) of § 7106 is expressly made subject to subsection (b), and takes the position that its negotiating proposal concerned "procedures which management officials of the agency will observe in exercising [their] authority. . . ." Section 7106(b)(2).[2]

In reviewing decisions of the FLRA, this Court's practice is to uphold the Authority's negotiability determinations if they are "reasonably defensible." *American Federation of Government Employees, Local 3748 v. FLRA*, 797 F.2d 612, 615 (8th Cir.1986). Under this deferential standard of review, we are unable to set aside the Authority's decision. The Union argues that its proposal for use of seniority as a criterion would come into play only after the employer has determined which of its employees are qualified for a given promotion. Thus, the employer's decision as to qualifications would have already been made, its management prerogatives fully satisfied, before the Union's seniority proposal would come into play. Seniority would be important only as between equally qualified employees, and the employer would have determined which employees were qualified.

---

**1.** The Hon. Garvin Lee Oliver.

**2.** The Union also claims that its proposal was negotiable because it concerned "appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials." Section 7106(b)(3). We agree with the Authority that this contention was not properly preserved below, and we therefore do not address it.

The Center, on the other hand, argues that "qualifications" in this context can have more than one meaning. There are such things as minimum qualifications, the kinds of things that can be put down on paper, for example, whether someone has passed an examination. The employer concedes that all of the minimum qualifications, in this sense of the words, would have been met by the pool of employees it had selected for promotion. The employer insists, however, that there is another relevant sense in which qualifications come into play. There are such things as personal qualifications, like reliability or speed of work, and these qualities, all of which are job-related, vary from one individual to another. The mere fact, accordingly, that each member of a group of employees selected for promotion is minimally qualified does not also necessarily mean that each such member is equally qualified. There may be instances, the Center argues, when it needs a quicker or more reliable employee at one building or another, and the Union's proposal, if agreed to after bargaining, would prevent the employer from using its own discretion to make assignments in such instances.

The Authority agreed with the Center on this point, and the record contains support for this conclusion. In one instance, for example, fourteen trainees had completed a claims-authorization class. The employer had decided that four of these trainees needed to be assigned to MTOB, the less desirable building. At the end of the training class, three of the fourteen trainees were rated below average, though they had received passing marks and were therefore minimally qualified. At least one of these trainees should have been assigned to the MTOB in order to equalize work assignments in the manner considered necessary by the employer. But, because all three of these below-average trainees had seniority, they had to be given their building preference (FOB) under the assignment practices obtaining at the Center before its 1983 proposed change. In this way, employee preference and seniority combined to prevent management from exercising its right to assign employees with better skills to the location where the work required their presence.

The ALJ put it this way:

■f management had a particular need for the skills of an employee at one building location, but based on seniority the employee was entitled to go to another building, management would have to assign the employee based on his seniority and could not assign the employee where it considered his services to be needed the most.

*Department of Health and Human Services, Social Security Administration, Baltimore, Maryland and American Federation of Government Employees, AFL–CIO,* No. 7–CA–40172, ALJ's slip op. 9 (recommended decision filed Feb. 6, 1985).

■ The case law supports the Authority's method of analysis. The leading case appears to be *Department of Defense v. FLRA,* 659 F.2d 1140 (D.C.Cir.1981), *cert. denied sub nom. AFGE v. FLRA,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). There, union proposals that would have compelled selection of a particular individual, based on seniority, at least in some instances, were held nonnegotiable, and the "procedures" clause of § 7106(b)(2) was held inapplicable to these proposals. On the other hand, once an employer has selected a group of best qualified candidates, a union proposal to use seniority as a way of distinguishing among these candidates does not impermissibly infringe on management prerogatives, and is negotiable under § 7106(b)(2). See *United States Naval Ordnance Station, Louisville, Kentucky v. FLRA,* 818 F.2d 545, 549 (6th Cir.1987). If the pool of employees we were dealing with here were all equally qualified, or, to put it another way, if minimal qualifications were all that the employer were interested in or had a right to insist upon, *Naval Ordnance* would strongly indicate a result in the Union's favor. But those are not the facts before us. Here, the Union's proposal would interfere with the right of management to use its full discretion to determine individual qualifications and skills necessary to perform a particular job assignment. "[J]ob requirements [may

lawfully be] determined on an individual basis, and [in that event] the [employer] is permitted to consider 'job-related individual characteristics' such as judgment and reliability. *Department of Defense*, 659 F.2d at 1160." *Naval Ordnance*, 818 F.2d at 551. In other words, only after the Center has assessed the individual characteristics of each of the employees relevant for promotion, and decided, on the basis of that assessment, which building the employees need to be assigned to, on the basis of the varying work loads of the two buildings, has management's prerogative been fully used. The Union's proposal would interfere with management's power of choice before that point in time had been reached. It is accordingly, under the governing precedents, an impermissible encroachment on management rights.

### III.

The Union also argues that under § 7106(a)(2) any exercise of management prerogative must be "in accordance with applicable laws...." It points out that when management first introduced its proposal in 1983, it stated as one of the reasons for the proposal a desire to modify "staffing and employee racial and sexual imbalances that had developed over a period of several years." Assigning employees on the basis of race or sex, the Union says, cannot be lawful, and, accordingly, management's proposal cannot be a legitimate invocation of management rights.

The reference in the record to racial and sexual imbalances is obscure. We cannot be certain what the Center might have been referring to at the time, nor do the opinions of the ALJ or of the Authority itself further illuminate the issue. In any case, we agree with the Authority that this question is not properly presented in the present proceeding. The Union's proposal is nonnegotiable because it affects management's rights to assign employees. The proposal would not become negotiable even if the agency's assignment of employees should in the future be exercised in an unlawful manner. If that should happen, the Union or its aggrieved members would have available remedies, either a grievance procedure or a court action. It is not necessary to attempt to resolve this question in the context of the present negotiability proceeding.

For the reasons given, the decision of the Authority is

Affirmed.