**WEST CENTRAL PACKING, INC., Plaintiff,**

v.

**EMPIRE FIRE AND MARINE INSURANCE CO. and Federal Crop Ins. Corp., Defendants.**

**No. 5:92–CV–55.**

United States District Court, W.D. Michigan, S.D.

June 11, 1993.

Opinion and Order on Motions to Amend and for Certification July 6, 1993.

Edward T. Noonan, Anderson, Stull & Kraft, Lansing, MI, for plaintiff.

Thomas E.S. Tiderington, Piatt, Bartosiewicz, Tiderington & Kimbrel, Kalamazoo, MI, for defendant Empire Fire and Marine Ins. Co.

John A. Wilson, Asst. U.S. Atty., John A. Smietanka, U.S. Atty., Grand Rapids, MI, for defendant Federal Crop Ins. Corp.

## OPINION

QUIST, District Judge.

West Central Packing, Inc. (West Central) is an orchard located in Van Buren County, Michigan. In 1990, 1991, and 1992 West Central's apple orchards suffered frost, hail and low yield damage. The amount of damage experienced by West Central in 1990 and the adjustment of its claims for that year are the subject of West Central's action against Empire Fire and Marine Insurance Co. in Case No. 5:91–cv–27. The amount of damage experienced by West Central in 1991, the adjustment of its claims for that year and the cancellation of West Central's 1992 crop insurance coverage are the subject of West Central's action against Empire Fire and Marine Insurance Co. in Case No. 5:92–cv–55. Both of these actions involve the apple production guarantee established for West Central by the Federal Crop Insurance Corporation (FCIC). This matter is before the Court on FCIC's motion for summary judgment.

### Federal Crop Insurance Program

Federal Crop Insurance began with the enactment of the Federal Crop Insurance Act of 1938. 7 U.S.C. § 1501 et seq. One of the declared purposes of the Act is to "promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance ..." 7 U.S.C. § 1502. Crop insurance is designed to insure producers of agricultural commodities against loss resulting from unavoidable causes such as drought, flood, hail, wind, frost, snow, tornado, and plant disease. 7 U.S.C. § 1508(a). The first crops to be insured were wheat, corn, soybeans, and other basic crops. Apples became an insurable crop in the 1980's.

The Act created the Federal Crop Insurance Corporation (FCIC), an agency within the Department of Agriculture responsible for carrying out the purposes of the Act. Congress relies upon the FCIC to fill in the necessary details of the crop insurance program. FCIC sells crop insurance policies directly and also permits agents or reinsurers to sell insurance subject to FCIC review and control. 7 U.S.C. § 1508(b) and (h). To encourage participation in the insurance program, 30 percent of each producer's premium is paid by the FCIC. 7 U.S.C. § 1508(e)(3). A grower can insure his crop up to 75 percent of the "recorded or the appraised average yield" as adjusted. 7 U.S.C. § 1508(a). Adjustments to the recorded or appraised yields must encompass a representative period and must be designed so that the average yields fixed for farms in the same area which are subject to the same conditions are fair and just. *Id.*

Typically, a grower that wants to become insured submits an application for insurance to an agent of FCIC. If the grower is a first time insured an inspection of his farm is conducted. Forms containing information regarding the condition of the orchard are sent with an application to a FCIC Field Underwriting Office (FUO). If the application is approved, additional information is submitted to FCIC for the purpose of setting a yield. The FCIC assigns each unit of the orchard a yield. If that figure is not rejected, insurance coverage is set at that amount.

When a grower applies for FCIC apple crop insurance for the first time, FCIC prefers to have ten years of actual production history (APH) from the grower-applicant to arrive at the recorded or appraised average

yield. However, FCIC will accept four years of records if that is all that is available. If the applicant has fewer than four years, FCIC has developed a formula for computing the yield.[1] For example, if only one year of production history is available, that number is 25 percent of the necessary four years. The remaining years are derived from a statewide base yield figure developed by FCIC as a minimum basic offer used to serve as a production guarantee for applicants who do not have records of production history available. Thus, with one year of production history providing 25 percent of the four year calculation, 75 percent of the approved or assigned APH figure is derived from the statewide base yield. In the second through fourth years the base yield ratio drops 25 percent each year until the grower has four years of its own production history.

To further individualize the APH for applicants with fewer than four years of production history, FCIC applies an Orchard Yield Factor. The Orchard Yield Factor is derived from the inspection report of the orchard and is based upon factors such as management practices, irrigation, fertilization, frost control devices and pruning. The Orchard Yield Factor ordinarily ranges from .6 to 1.0.

If a first time applicant is applying for insurance on units of an orchard which have a history with FCIC under prior ownership, the new owner can ask that he be given the benefit of the prior owner's production history. If the successor owner was involved in the production of the prior yield, the history can be transferred. However, FCIC will not use these records without approval of the applicant.

## Background Facts

As stated above, West Central is an orchard operation located in Van Buren County. The 1990 crop year was the first year that the orchard applied for apple crop insurance under West Central's management. West Central applied for FCIC apple insurance through Empire Fire and Marine Insurance Co., a licensed private insurance broker. When it applied for crop insurance, West Central had a production history of only one year. Because West Central did not have the necessary four years of actual production history and chose not to submit the production records of the prior owner[2], the 218 bushels per acre base yield established by FCIC for apples had to be used in calculating the plaintiff's APH. In 1990, FCIC assigned the plaintiff's orchard an Orchard Yield Factor of 1.4. It used one year of actual production history and three years of the 218 base yield figure. Consequently, the APH yield assigned to the plaintiff in 1990 ranged from 452 to 773 bushels per acre. In 1991, FCIC assigned the plaintiff's orchard an Orchard Yield Factor of 1.2 and used two years of actual production. This resulted in an assigned APH yield ranging from 410 to 721 bushels per acre. Affidavit of Dennis R.

**1.**

| Yrs. Acct. Rec. | Prod.'s Avg. Yld. | FUO Base Yld. | FUO Orch. Yld. Factor | Prelim. APH Yld. |
|---|---|---|---|---|
| 0[ | —— | + 1.00(218)] | × (.6–1.0) | = xxx Bu/Ac For YYY Trees on zzz Ac. |
| 1[ | .25(PA) | + .75(218)] | × (.6–1.0) | = " " " " " " " " " " " " " " " " " " " " |
| 2[ | .50(PA) | + .50(218)] | × (.6–1.0) | = " " " " " " " " " " " " " " " " " " " " |
| 3[ | .75(PA) | + .25(218)] | × (.6–1.0) | = " " " " " " " " " " " " " " " " " " " " |
| 4[ | 1.00(PA) | + —— ] | × (.6–1.0) | = " " " " " " " " " " " " " " " " " " " " " " |

**2.** Plaintiff states that it had no relationship with the prior owner and was not able or willing to certify the accuracy of the yields that the prior owner had recorded. Defendant points out that Eugene R. Rasch signed the APH form for the prior owner, Great Lakes Fruit & Produce. Mr. Rasch was the principal of plaintiff and FCIC would have considered using the 1988 production figure.

Janusick at paragraphs 15–16. The approved yield figure was unacceptable to the plaintiff. He appealed the 218 bushels per acre figure by means of the Department of Agriculture appeal process. The United States Department of Agriculture determined that the approved yield was correctly calculated for establishing a premium and guarantee.

### Argument

In this case plaintiff challenges the FCIC's determination that the base yield for apples during the period in question was 218 bushels per acre. This figure was below the United States Department of Agriculture (U.S.D.A.) estimate of the 10 year average for Michigan apple production which was 434.8 bushels per acre. Because this figure was utilized in calculating plaintiff's loss entitlements for both 1990 and 1991, it is at issue in both Case Nos. 5:91–cv–27 and 5:92–cv–55. Plaintiff claims that the FCIC acted arbitrarily and/or capriciously in setting a base APH for apples which was only one-half of the average yield in Michigan. The FCIC argues that federal crop insurance was not designed to insure a grower's expectations. FCIC contends a grower must prove that his orchard can produce an "average yield" before it is entitled to insurance coverage in that amount. FCIC believes that it applied its expertise to establish a base yield figure which was not only fair but also actuarially sound.

### FCIC's Argument

FCIC explains that the base yield concept is designed to offer coverage until a grower can establish its own production history. It asserts that 7 U.S.C. § 1508(a) does not mandate the use of average figures for producers like plaintiff who have no yield history. A grower is not entitled to the average yield figure because, by definition, half of the growers do not produce crops which meet the average yield. If the average yield were used as the base yield, the bottom half of the scale would automatically be over-insured. Because FCIC cannot force an applicant to produce his production records when applying for insurance, the bottom half of the producers would never provide records if an APH were based on an area average. Furthermore, applicants with orchards which will probably produce high yields are assigned an orchard yield factor to reflect the orchard's higher production prospects.

In its brief, FCIC explained how it arrived at the 218 bushels per acre base yield figure which is in dispute.[3] Mr. Janusick, a crop insurance underwriter for the FCIC,[4] began by referring to information he acquired in 1987 at a FCIC Peach/Apple Meeting and Field Day in Benton Harbor. At the meeting, Dan Temme, an FCIC employee from Pennsylvania, described *peach* cultural factors and their implications for FCIC insurance. He stated that peach trees can be categorized into groups: 4–6 year-old trees; 7–12 year-old trees and trees over 12 years old. At 4–5 years the trees are becoming fruit bearing and no prior history would likely be available. At 7–9 years the trees would be bearing fruit and production history would be available. From 10–12 years the trees would be declining fruit producers. Mr. Janusick stated in his deposition that he considered 4–6 year-old peach trees to be the category most appropriate to an apple grower who had little or no history. The speaker also stated that a reasonable yield for fourth growing season peach trees is 75 to 100 bushels per acre. Another speaker stated that 175 bushels per acre was a six year average with 400 bushels being produced in a good year. Mr. Janusick noted the discrepancy in the sets of yield figures and was told

3. Prior to 1989 there were no FUO base yield figures for apples in Michigan. However, after an area wide draught in 1988 FCIC directed field underwriters to develop underwriting guidelines for apples prior to the 1990 crop year.

4. Mr. Dennis Janusick has an agricultural educational background at the high school and college levels. He has experience in analysis and statistics related to agricultural production matters. He assisted with underwriting various crops in Michigan from 1986 to 1987. In 1988 he was responsible for underwriting all crops in Michigan. Mr. Janusick learned about peaches from FCIC USDA Co-op extension meetings. In 1984 and 1985 he received approximately 30 days of training regarding apples from an FCIC apple crop specialist underwriter in Spokane.

that the higher number represented what a farm which was part of the field day demonstration could produce. Mr. Janusick met with a Cooperative Extension Agent from Michigan who confirmed that the 75–100 bushels per acre figure was accurate.

In April of 1989, Mr. Janusick contacted the Michigan Agricultural Stabilization and Conservation Service (ASCS) to obtain their figures [5] for peach and apple production. He then compared the ASCS figures to the figures he had obtained at the meeting in Benton Harbor and arrived at a base yield figure for apples.

> He [Mr. Janusick] compared their peach yield figures with the Benton Harbor peach information and noted that ASCS figures for peaches were about twice the Benton Harbor figure. He concluded that because of the similarity of peaches and apples for insurance purposes [6] ... the ASCS apple figure of 434.8 bushels per acre should be reduced by half to 218 bushels per acre for FCIC assigned yield purposes.

Defendant, FCIC's Brief in Support of Its Motion for Summary Judgment at pp. 12–13.

Basically, Mr. Janusick compared peach yields to apple yields. He then set a base yield figure for apples by dividing the actual Michigan apple production average in half.

FCIC notes that during the period the 218 bushels per acre figure has been used, statistics reveal that FCIC has sustained a substantial loss. The loss ratio is 1.38 where 1 is the break even point. FCIC uses this information to suggest that any adjustment in the 218 bushels per acre figure should be downward rather than upward.

---

5. ASCS figures are used for disaster relief purposes when Congress declares a disaster year. ASCS takes a five year yield history, omits the high and low years and averages the remaining years.

6. Mr. Janusick's affidavit states in paragraph 13 that:

Both peaches and apples are perennials.
Both are tree crops.
Both are subject to the same perils.
Both have similar cultural and management practices.

*Plaintiff's Argument*

Plaintiff argues that the FCIC's comparison of apples to peaches is inappropriate. The decision to halve the state average apple yields for crop insurance purposes was made without creating an administrative record. According to the plaintiff, there was no reasonable justification for making four year old peach trees the foundation of either peach yields or apple yields.

Furthermore, plaintiff questions the method by which Mr. Janusick arrived at the base yield for peaches.[7] Mr. Janusick's notes from the Benton Harbor meeting indicate that he arrived at a 75 bushels per acre peach figure from information he received from Michigan extension agents Chris Rajzer and Mike Thomas. Plaintiff contends that the affidavit submitted by Mike Thomas raises issues of fact regarding peach statistics.

6. I am informed that Mr. Janusick says that I told him at that meeting in Benton Harbor in 1987, that 75 bushels per acre was a reasonable yield to expect from four year old peach trees in Michigan, and am informed further, that Mr. Janusick concluded that 75 bushels per acre was a reasonable figure to use for peach crop insurance purposes in Michigan.

7. While I might have said something about production expectations for a particular peach orchard, I am certain I said nothing about the average yield expectations for all peach orchards in Michigan. For that sort of information, I would have directed Mr. Janusick to the Michigan Agricultural Statistics Service (MASS), the keeper of such data.

8. I must say unequivocally also, that a 75 bushel per acre peach yield average is categorically uneconomical. Such a yield

Same producers may produce both apples and peaches.
The environment and location are similar for producing these crops.
Similar marketing methods or marketing alternatives are utilized.
Crop insurance program purposes are similar.

7. Plaintiff also argues that neither Mr. Janusick nor Mr. McKean, the Chief of the Underwriting Services Branch, brought any special agency expertise into their decision to set the apple yield at 218 bushels per acre.

would be insufficient to support Michigan's peach industry. Clearly, the real peach yield average in Michigan is far more per acre—in the range of 175 to 200 bushels per acre....

Affidavit of T. Mike Thomas at paragraphs 6, 7 and 8.

According to the plaintiff, Mr. Thomas' affidavit also casts doubt upon Mr. Janusick's decision to treat apple trees like peach trees:

There are dissimilarities between peaches and apples which cannot be ignored, however. Apple trees produce a higher density of fruit per cubic foot than peaches. Apple trees produce fruit for more years than peach trees. Peaches are thinned to one fruit per 6″ to 8″ on the branch, while apples are thinned to 4″ apart. A four year old peach tree is not comparable to a four year old apple tree. Neither average peach yields nor average peach tree ages can be compared in any way to average apple yields or tree ages.

Affidavit of T. Mike Thomas at paragraph 12.

FCIC contends that Mr. Thomas' affidavit never explicitly refutes Mr. Janusick's recollection regarding the 75–100 bushels per acre figure. Neither does it refute the premise that a four year figure is an appropriate place to start the APH process. FCIC explains that many first time applicants will be growers with four year-old trees just entering their productive bearing years.

Plaintiff further asserts that the FCIC's argument regarding actuarial soundness ignores the Act's reference to rates.

Actuarial soundness. Not later than 180 days after the date of enactment of this subsection [enacted Nov. 28, 1990], the Corporation shall compile and make available, by region and by crop, the *rates* that would be necessary to achieve actuarial soundness.

7 U.S.C. § 1508(d) (emphasis added).

(e) Premiums.

(1) The Corporation may fix adequate premiums for insurance at such rates as the Board deems actuarially sufficient to cover claims for losses on such insurance and to establish as expeditiously as possible a reasonable reserve against losses.

7 U.S.C. § 1508(e).

Plaintiff argues that FCIC must adjust the rates or premiums charged to the orchards in order to achieve actuarial soundness. It should not achieve actuarial soundness by insuring only one-half of the average yield. Furthermore, plaintiff contends that no rational argument can be made that actuarial soundness dictates the 218 bushels per acre figure. Plaintiff contends that Mr. Janusick made no effort to review actuarial data in arriving at the 218 figure.

In addition to the arguments outlined above plaintiff challenges FCIC's argument that an average yield cannot be used as a base yield. Plaintiff also complains that by applying an "above average" 1.4 orchard yield factor to a new insured the base APH is increased from 218 bushels per acre to 305 bushels. This number is still only 70 percent of the average. FCIC responds that simply claiming to be average is insufficient without the appropriate proof.

Finally, plaintiff asserts that it selected 75 percent coverage and, therefore, should be insured to 75 percent of the figure derived by averaging its reported production with the MASS [8] Michigan average, adjusted by the orchard factor. Its coverage should not be limited to 75 percent of 50 percent of the state average subject to adjustments.

### Legal Standard

Summary judgment is appropriate if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent

---

**8.** The Michigan Agriculture Statistics Service (MASS) has developed statistics for apple yields. By converting the MASS pounds per acre statistics to FCIC's bushels per acre statistics it appears that the ten year average for apple production in Michigan for the period through 1989 was 434.8 bushels per acre.

the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the nonmoving party. *Id.* This standard requires the nonmoving party to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. 477 U.S. at 250–51, 106 S.Ct. at 2511. A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate that there is a genuine issue of material fact for trial. *Id.* The Court must draw all inferences in a light most favorable to the non-moving party, but the Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Scope of Review

■ A court should not disturb an agency interpretation of the statutes the agency is charged with implementing unless the agency's actions are arbitrary, capricious, an abuse of discretion, or contrary to law. *United States Naval Ordnance Station v. Federal Labor Relations Authority,* 818 F.2d 545, 547–48 (6th Cir.1987). In *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), the Supreme Court outlined the scope of review under the arbitrary and capricious standard.

The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." [citation omitted]. In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." [citations omitted]. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

463 U.S. 29, 43, 103 S.Ct. 2856, 2866.

### Analysis

■ This Court finds that the alleged factual disputes in this matter are not material. 7 U.S.C. § 1508(a) provides in part:

Any insurance offered against loss in yield shall make available to producers protection against loss in yield that covers 75 per centum of the recorded or appraised average yield of the commodity on the insured farm for a representative period (subject to such adjustments as the Board may prescribe to the end that the average yields fixed for farms in the same area, which are subject to the same conditions, may be fair and just).

Although the method used by FCIC to establish a base yield figure for apples is somewhat suspect, this Court is not permitted to substitute its judgment for that of the FCIC. Personally, I am somewhat troubled by the FCIC's reliance upon peach statistics and by its comparison of peaches to apples. However, I find that FCIC has articulated a rational connection between the facts and its decision to establish 218 bushels per acre as

the base yield. Although 218 bushels per acre is only half of the ASCS figure for actual average production in Michigan, the base yield is admittedly a minimum figure.[9] FCIC uses it as a starting point to calculate coverage for a particular producer in a given year. The remaining factors—the orchard yield factor and the production history—individualize the 218 bushels per acre figure. FCIC makes an individual investigation of each producer to determine, as closely as it can, the assigned yield for each individual grower. In this case, the orchard yield factor and the plaintiff's production history raised the bushels per acre figure dramatically. The plaintiff's assigned yield in 1990 ranged from 452 to 773 bushels per acre. Its assigned yield for 1991 ranged from 410 to 721 bushels per acre. These figures are not out of line with the plaintiff's actual production, and I cannot say that they are unfair or unjust.

The issue in this case is whether FCIC acted arbitrarily in establishing 218 bushels per acre as the base yield for apples.[10] This Court may not disturb FCIC's actions unless they were arbitrary, capricious, an abuse of discretion, or contrary to law. This Court finds that FCIC did not act arbitrarily or capriciously in setting the base yield at 218 bushels per acre. FCIC obtained relevant statistics concerning apple yields in Michigan. It established a base yield which was subject to adjustment based upon inspections of the farm and the grower's practices. Although the base yield figure was not as high as plaintiff would like, FCIC did consider relevant data and articulated a satisfactory explanation. Therefore, FCIC's motion for summary judgment will be granted.

An Order consistent with this Opinion will be entered.

## OPINION AND ORDER ON MOTIONS TO AMEND AND FOR CERTIFICATION

On June 11, 1993, this Court entered an Opinion and Order granting defendant Federal Crop Insurance Corporation's (FCIC) Motion For Summary Judgment and dismissing the plaintiff's complaint. On June 17, 1993, plaintiff filed a Motion to Amend Order of Dismissal pursuant to Fed.R.Civ.P. 60(a) and (b). Plaintiff requests that this Court's Order be amended to dismiss the complaint only as to defendant FCIC and leave at issue plaintiff's complaint against defendant Empire Fire and Marine Insurance Company (Empire). Plaintiff states that the base yield figure approved by the Court will be used to calculate its claims against Empire.

In response, FCIC requests this Court to certify its order as final as to the claim relating to FCIC pursuant to Fed.R.Civ.P. 54(b). Rule 54(b) states that "when multiple parties are involved, the court **may** direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay ..." This Court has chosen not to direct the entry of a final judgment.

**IT IS HEREBY ORDERED AND ADJUDGED** that this Court's Order filed June 11, 1993, be amended. Defendant FCIC's Motion for Summary Judgment (docket entry # 22) is **GRANTED** but the plaintiff's complaint is not dismissed.

Dated: July 6, 1993.

---

9. The base yield was not intended, nor should it be construed, to be an average of actual production. I believe defendant's argument that growers without a production history should not be entitled to the average figure is a legitimate point. Half of the growers in Michigan do not produce quantities equal to the state average.

10. The basic procedure for issuing federal crop insurance is found in 7 U.S.C. § 1508. The Board of the FCIC is given the authority to establish the amount of coverage and the premium to be charged for the insurance. Subsection (a) directs the FCIC on how to determine the amount of coverage. Subsections (c), (d) and (e) require the FCIC to adopt *rates* that will make the program actuarially sound. The statute does not direct the FCIC to reach the goal of actuarial soundness through adjusting the amount of coverage as distinguished from adjusting the premium rates. If the FCIC set the amount of coverage in order to establish actuarial soundness, then, I think, the FCIC would have violated statutory procedure. However, in this particular case, the FCIC made an individual determination as to plaintiff's anticipated productivity.