## NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, LOCAL R7–23, Petitioner,

v.

## FEDERAL LABOR RELATIONS AUTHORITY, RESPONDENT,

### Department of the Air Force, Intervenor.

### No. 86–1080.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 26, 1989.

Decided Jan. 26, 1990.

---

Gordon P. Ramsey, Boston, Mass., for petitioner.

Pamela P. Johnson, Atty., Federal Labor Relations Authority, with whom William E. Persina, Acting Solicitor, Federal Labor Relations Authority, was on the brief, for respondent. Ruth E. Peters and Steven H. Svartz, Attorneys, Federal Labor Relations Authority, Washington, D.C., also entered an appearance.

Marilyn S.G. Urwitz, Attorney, Dept. of Justice, with whom William Kanter, Washington, D.C., and William C. Owen, Attys., Dept. of Justice, were on the brief, for intervenor.

Before MIKVA, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

A local union of the National Association of Government Employees appeals from an order of the Federal Labor Relations Authority upholding the Air Force's decision to change the working hours of one of its employees at Scott Air Force Base. The union and the Air Force had bargained to impasse, and the union contends that the Air Force was required after impasse to maintain the status quo pending ultimate resolution of the dispute. The Authority found, however, that the union failed to take the steps needed to trigger that duty. *Department of the Air Force, Scott Air Force Base*, 33 FLRA 532 (1988). We uphold that finding and therefore affirm the FLRA's decision. As a result, we need not reach the other claims raised by the parties.[1]

\* \* \*

Robert Porter runs the battery shop at Scott Air Force Base, exchanging fresh batteries for worn out ones. Before the Air Force's change of his hours, he worked from 3 AM until 11:30 AM. In September 1981, the Air Force undertook to improve the overall efficiency of its operations at Scott. As part of that effort, it decided that it could enhance both efficiency and safety by changing Porter's hours to 7 AM to 3:30 PM, when there would be more people around who would need batteries and who could help Porter in case of an accident (he was then the only employee working in the battery shop). Porter objected because of the loss of a nightpay differential. The local union bargained with the Air Force on his behalf, but without success. At a meeting on December 1, 1981, the union and the Air Force agreed that they were at an impasse. 33 FLRA at 534.

By letter dated December 23, 1981, the Air Force notified the union that it intended to implement the change effective January 10, 1982. The union responded the same day with a letter of its own, saying that it "ha[d] no choice but to notify the FSIP [Federal Service Impasses Panel] and the FMCS [Federal Mediation and Conciliation Service] that we desire to have their services in this matter." Record Appendix

---

1. In particular, we express no view on whether the Authority adequately justified its change of position on what constitutes a "tour of duty" under 5 U.S.C. § 7106(b)(1) (1988).

("R.A.") 15. The same day the union also sent letters to both the Mediation Service and the Impasses Panel, "request[ing]" the former to "provide your services" and notifying the latter of the situation and of its desire that management maintain the status quo "during the impasse procedures." R.A. 16–17. The Air Force changed Porter's working hours as planned on January 10, 1982.

Had the union properly invoked the services of the Impasses Panel, any Air Force failure to maintain the status quo (to the extent consistent with its functions) would have been, under the Authority's rulings, an unfair labor practice in violation of 5 U.S.C. § 7116(a)(1), (5) and (6). *Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms*, 18 FLRA 466, 469 (1985); see also *U.S. Customs Service*, 16 FLRA 198, 200 (1984). The purpose of this requirement is to facilitate use of the impasse resolution procedures, "thereby fostering stability" in federal labor-management relations. *Department of the Treasury*, 18 FLRA at 469.

The status quo duty depends, however, on some party's having properly invoked the services of the Impasses Panel. This requires filing a fairly simple request form, on which the applicant is to state such basic information about the dispute as the identity of the parties, the issues at impasse, the positions of the parties, and an account of negotiation and mediation sessions held. See 5 CFR § 2471.1–.5 (1988). The union did not comply with these requirements, as it quite rightly concedes in its brief. It failed to provide either the required form or its substantive content, and its single brief letter to the Impasses Panel did not even request its services. Nor did the union follow the letter up even after the Air Force sent a reminder that it planned to change Porter's hours on January 10, 1982. We have no hesitation in affirming the Authority's conclusion that the union did not adequately invoke the services of the Panel, especially in light of the deference we owe the Authority's orders in these cases. See *National Treasury Employees Union v. FLRA*, 848 F.2d 1273, 1278 (D.C.Cir.1988) (quoting *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983)); *American Fed'n of Gov't Employees v. FLRA*, 815 F.2d 718, 719 & n. 10 (D.C.Cir.1987).

Had the Air Force unduly jumped the gun, by ordering the change before the union had a reasonable opportunity to seek the aid of the Impasses Panel, the Authority would have excused its noncompliance with the request procedures. It found, however, that the 18–day period between December 23, 1981 and January 10, 1982 provided a reasonable opportunity. See 33 FLRA at 545–46. Its decision here is both reasonable and perfectly consistent with its previous ones on the subject. See, e.g., *Department of the Navy, U.S. Naval Supply Center*, 31 FLRA 1088, 1093 (1988) (11 days notice sufficient); *Department of Health and Human Services, Social Security Administration*, 16 FLRA 217, 230–31 (1984) ("more than a week" sufficient); *U.S. Customs Service*, 16 FLRA at 200 (six days notice sufficient); *U.S. Air Force, Air Force Logistics Command*, 5 FLRA 288, 294 (1981) (eight days sufficient).

The Authority also rejected the union's argument that its letter to the Mediation Service triggered a duty on the part of the Air Force to maintain the status quo. It left open whether the duty might arise once the Mediation Service started "working" to resolve an impasse, 33 FLRA at 547, but found that in any event the letter was not enough. Although the union letter to the Mediation Service requested its help "as soon as possible," R.A. 16, it did not inform the Service of the January 10 deadline or provide any details of the dispute. Also, the union sent no follow-up letter, despite the Air Force's reminder. The Mediation Service never contacted either of the parties involved. The Authority found no duty to maintain the status quo under these circumstances, and petitioner offers no reason why we should interfere with that judgment. See *Order Denying Request for General Ruling*, 31 FLRA 1294, 1297 (1988) (whether status quo must be maintained once parties have bargained to

impasse depends on "many factors and the evaluation of the facts in each case").

We note the union's assertion that 5 U.S.C. § 7119 makes invocation of the help of the Mediation Service a prerequisite to seeking the aid of the Impasses Panel. Nothing in the language of § 7119 appears to impose such a requirement, and the union reveals no other source. Accordingly we do not pass on how the existence of such a requirement might affect the Authority's ruling.

The decision of the Authority is

*Affirmed.*