# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 24, 2020   Decided October 13, 2020

No. 19-1111

ANTILLES CONSOLIDATED EDUCATION ASSOCIATION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

On Petition for Review of an Order
of the Federal Labor Relations Authority

*Richard J. Hirn* argued the cause and filed the briefs for petitioner.

*Sarah Blackadar*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. On the brief were *Noah B. Peters*, Solicitor, *Rebecca J. Osborne*, Deputy Solicitor, and *Joshua D. Brown*, Attorney.

BEFORE: PILLARD and KATSAS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*:  This case arises from a bargaining dispute between a federal agency that runs military-base schools and a union representing teachers at the schools.  The Federal Service Impasses Panel ordered the parties to adopt an entire collective-bargaining agreement, including a disputed provision about the daily workday and several other provisions on which the parties themselves had reached tentative agreement before the Panel was consulted.  The Federal Labor Relations Authority held that the Impasses Panel lacked authority to impose the workday and agreed-to provisions.  We uphold those rulings, but we set aside the FLRA's further ruling that the workday provision imposed by the Panel infringed the agency's statutory right to assign work.

I

A

The Federal Service Labor-Management Relations Statute gives federal employees the right to engage in collective bargaining over their conditions of employment through a union of their choice.  5 U.S.C. § 7102.  The employing agency must bargain in good faith with the union.  *Id.* § 7114(a)(4).  The agency commits an unfair labor practice if it refuses to do so, *id.* § 7116(a)(5), or if it refuses without justification to follow mandatory "impasse procedures and impasse decisions," *id.* § 7116(a)(6).

The Statute makes certain employment conditions nonnegotiable.  Among other things, it preserves the right of federal agencies "to assign work."  5 U.S.C § 7106(a)(2)(B).  It also exempts from collective bargaining any matters "specifically provided for by Federal Statute," *id.* § 7103(a)(14)(C), including the wages and benefits of most federal employees.  But because the Secretary of Defense has discretion to set the compensation of teachers in military-base

schools, 10 U.S.C. § 2164(e)(2)(C), the teachers may bargain over it. *Fort Stewart Schs. v. FLRA*, 495 U.S. 641, 649 (1990).

The Federal Labor Relations Authority implements the Statute. 5 U.S.C. § 7105(a). The Federal Service Impasses Panel, an entity within the FLRA, helps to resolve negotiation impasses between agencies and unions. *Id.* § 7119(c)(1). If the parties are at impasse, either one may ask the Impasses Panel for assistance. *Id.* § 7119(b)(1). The Panel then may make recommendations or find facts. *Id.* § 7119(c)(5)(A). As a last resort, the Panel also may "take whatever action is necessary and not inconsistent with this chapter to resolve the impasse," *id.* § 7119(c)(5)(B)(iii), which includes imposing contract terms on the parties, *see Nat'l Fed'n of Fed. Emps. v. FLRA*, 789 F.2d 944, 945 (D.C. Cir. 1986).

Orders of the Impasses Panel are not directly reviewable in court. Instead, an aggrieved party may obtain judicial review by violating a Panel order and then seeking review of any ensuing FLRA order finding an unfair labor practice. *See* 5 U.S.C. § 7123(a); *Council of Prison Locs. v. Brewer*, 735 F.2d 1497, 1500 (D.C. Cir. 1984).

B

The Department of Defense Domestic Dependent Elementary and Secondary Schools is a federal agency that runs schools on United States military bases. The Antilles Consolidated Education Association is a union representing teachers and other professional employees at such schools in Puerto Rico. In 2015, the agency and the union began negotiating a collective bargaining agreement to succeed an expired 2011 agreement. The parties tentatively agreed on most proposed articles for the new agreement, but they deadlocked on various issues involving, as relevant here, two proposed articles and one proposed appendix.

The dispute before us largely centers on the workday provisions of the proposed agreement. In the 2011 agreement, those provisions were set forth in section 1 of Article 19, which began as follows:

**ARTICLE 19**

**HOURS OF WORK AND SCHEDULING**

*Section 1*. **Workday.**

a. The workday for full-time bargaining unit members shall consist of eight (8) hours. Unit members must be physically present at the work site for a seven and one-half (7½) hour duty day which includes a 30-minute non-paid duty-free lunch period.

b. Salaries in this contract were negotiated with the realization and expectation that bargaining unit members will perform one (1) hour per workday of preparation and professional tasks for completion of their assigned eight (8) hour workday. While this one (1) hour of preparation and professional tasks may typically be performed at or away from the work site at the election of the unit member, the Agency reserves the right to require that this eighth hour on a particular workday be accomplished at the school site for activities such as training, staff development, or faculty meetings. Not more than ten (10) general faculty meetings which extend the duty day should be scheduled during the school year. * * *

J.A. 64. The parties also disagreed over teacher compensation, which was addressed in Article 26 and Appendix F of the 2011 agreement.

During the 2015 negotiations, the union sought to carry forward the workday provisions from the 2011 agreement. The agency sought to eliminate the dedicated hour for preparatory and professional tasks and to require teachers to be at school for that hour. The agency took the position that these terms implicated its right to assign work and thus were nonnegotiable.

The union sought help from the Impasses Panel, which referred the matter to a factfinder. He concluded that the workday provisions from the 2011 agreement were negotiable and recommended that the successor agreement maintain them. The factfinder further recommended terms to resolve the various other disputes presented to the Panel, including new compensation terms for Article 26 and Appendix F. Finally, he recommended that the successor agreement incorporate all provisions on which the parties had already tentatively agreed.

The Impasses Panel adopted these recommendations. *Dep't of Def. Domestic Dependent Elementary & Secondary Schs. (DDESS) Fort Buchanan & Ramey Annex*, No. 16-FSIP-52, 2017 WL 393617 (Jan. 25, 2017). It ordered the parties to adopt an entire successor agreement, as recommended by the factfinder, including the disputed workday provisions and the provisions on which the parties had tentatively agreed. *Id.* at *9–10.

## C

After the agency refused to implement the successor agreement as ordered, the union filed an unfair labor practice charge with the FLRA. An administrative law judge recommended ruling for the union.

The Authority rejected the ALJ's recommendation and ruled substantially for the agency. *Dep't of Def. Domestic*

*Dependent Elementary & Secondary Schs. Fort Buchanan*, 71 F.L.R.A. 127 (2019). The FLRA reached five key conclusions. First, the Impasses Panel lacked authority to decide whether the disputed workday provisions infringed the agency's right to assign work. *Id.* at 133. Second, those provisions did infringe the agency's right to assign work. *Id.* Third, as a result, the parties should resume bargaining over workday and compensation issues. *Id.* at 133–34. Fourth, the Impasses Panel lacked authority to order the parties to adopt the provisions on which the parties had tentatively agreed before the union sought the Panel's help. *Id.* at 134. Fifth, the Impasses Panel did have authority to impose terms resolving other disputed issues besides the workday and compensation provisions. *Id.* As a result, the FLRA held that the agency committed an unfair labor practice only insofar as it refused to implement that final category of terms. *Id.* at 135.

Member DuBester dissented. He argued that the Impasses Panel had authority to impose the entire collective-bargaining agreement, including both the workday provisions and the provisions about which the parties had tentatively agreed. 71 F.L.R.A. at 137–38.

On review, the union challenges the first four rulings noted above. The agency does not challenge the fifth ruling.

II

We review FLRA orders under the standards of the Administrative Procedure Act. 5 U.S.C. § 7123(c). Thus, we consider whether the decision here is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). An agency decision is arbitrary and capricious if it is not reasonably explained. *See*, *e.g.*, *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 782 (2016).

III

We begin with the FLRA's three rulings related to the workday provisions of Article 19, section 1.

A

The FLRA first held that the Impasses Panel lacked authority to decide whether the disputed workday provisions were negotiable, and thus lacked authority to order the parties to adopt them in the successor agreement. The Statute authorizes the Impasses Panel to resolve bargaining impasses. 5 U.S.C. § 7119(b)(1), (c)(1). This does not include authority to resolve antecedent legal questions about whether the disputed provisions are negotiable. Those questions turn on the scope of the duty to bargain in good faith, which the FLRA itself must determine. *Id.* § 7105(a)(2)(E). Thus, "issues of negotiability are to be resolved by the Authority, not the Panel." *Commander Carswell Air Force Base*, 31 F.L.R.A. 620, 624 (1988); *see also Am. Fed'n Gov't Emps. v. FLRA*, 778 F.2d 850, 854 (D.C. Cir. 1985). Nonetheless, if the Impasses Panel faces a proposal that is "substantively identical" to one that the FLRA already has found to be negotiable, the Panel may itself make the negotiability determination. *Commander Carswell Air Force Base*, 31 F.L.R.A. at 624–25.

The union contends that Article 19, section 1 is substantively identical to provisions that the FLRA found negotiable in *United States Department of Defense Fort Bragg Dependents School*, 49 F.L.R.A. 333 (1994), and *National Education Association Overseas Education Association Laurel Bay Teachers Association*, 51 F.L.R.A. 733 (1996). The FLRA reasonably rejected that contention.

This case involves several interrelated provisions. Section 1(a) of Article 19 establishes an eight-hour workday and

requires teachers to be at school for seven hours of work and a 30-minute lunch break. Section 1(b) requires teachers to spend their eighth working hour on preparation and professional tasks, which they may elect to do at home. It then reserves to the agency the right to require the eighth hour of work to be done at school for activities such as training, staff development, or a limited number of faculty meetings. The agency contends that these provisions interfere with its right to assign work by effectively preventing it from determining when teachers must perform their eighth hour of work. The union responds that section 1(b) gives the teachers some latitude over *where* to perform their eighth hour of work, but does not prevent the agency from dictating *when* they must perform that work.

The provisions held negotiable in *Fort Bragg* and *Laurel Bay* were far different from the ones at issue here. In *Fort Bragg*, the provision required employees to be at work "at the scheduled time" and further required them to report "[c]hanges or variations" as soon as practicable. 49 F.L.R.A. at 334. The FLRA construed the latter provision to require employees to report any inability to arrive at work on-time, not to permit employees unilaterally to change their workday. *Id.* at 335. The disputed provision in *Laurel Bay* simply provided that the "normal duty day for all professional employees will be 7:45 to 3:15," 51 F.L.R.A. at 734, which the FLRA construed not to prevent the agency from changing the work hours on any specific day, *id.* at 738. Neither case involved anything like what is at issue here—a provision that arguably limits the agency's ability to assign specific tasks at specific times during one of the hours of a normal workday.

For these reasons, the FLRA permissibly concluded that the Impasses Panel lacked authority to determine the negotiability of the disputed provisions in Article 19, section 1.

Accordingly, the Panel could not order the parties to adopt those provisions.

B

The FLRA went further and held that section 1(b) was nonnegotiable because it interferes with the agency's right to assign work. Under prior FLRA precedent, agencies may be compelled to bargain over where employees will work, *HHS, Ctrs. for Medicaid Servs.*, 57 F.L.R.A. 704, 707 (2002), but may not be compelled to bargain over when employees will work, *Nat'l Treasury Emps. Union*, 66 F.L.R.A. 584, 585 (2012). Because neither party challenges that seemingly fine distinction, we accept it for purposes of this case.

The FLRA concluded that section 1(b) gives teachers "discretion to decide when to perform their paid hour of preparation and professional tasks." 71 F.L.R.A. at 133. The FLRA did not explain how the language of section 1(b) supports that conclusion. Instead, the FLRA asserted that the union had conceded the point before the Impasses Panel. *See id.* at 132. But as the Panel itself made clear, the union vigorously contested that point. *See DDESS Fort Buchanan & Ramey Annex*, 2017 WL 393617 at *3 ("The Union argues that … under the existing contract language, the Agency is free to require teachers to perform any duty *as scheduled by management*." (emphasis added)). The FLRA thus erred in treating as conceded the position advanced here by the union.

On the merits, there appear to be plausible arguments on both sides of the question whether section 1(b) allows teachers to decide when to perform their eighth hour of work. On the one hand, that provision allows teachers to perform preparation work at home, where the agency cannot easily control when they prepare. J.A. 64. Moreover, while the agency may require preparation work to be done at school (presumably during the

normal school-day) on "a particular workday," *id.*, that does not naturally mean "every workday." On the other hand, in giving teachers some control over whether to perform their eighth hour of work "at or away from the worksite," *id.*, section 1(b) by its terms addresses where but not when that work is performed. Moreover, the agency's reserved right to require the eighth hour of work to be performed at school is "for activities such as training, staff development, or faculty meetings," which are seemingly group activities to be scheduled by the agency. *Id.* Furthermore, the limitation of ten meetings per year applies only to faculty meetings, which suggests that other "activities such as" training or staff development may be scheduled as frequently as the agency wishes. *Id.* And another provision of Article 19 permits the agency "to assign additional work hours" beyond the normal workday at its discretion (for additional pay), J.A. 65, which suggests that the agency likewise may assign specific hours throughout the normal workday. We need not, and do not, choose between these competing interpretations. Instead, we note only that the FLRA has given no reasonable explanation for adopting the interpretation that would give teachers control over when as well as where to prepare for school, thus making section 1(b) nonnegotiable. We therefore set aside its negotiability ruling as arbitrary and capricious.

## C

After finding that the disputed workday provisions were unenforceable by the Impasses Panel and nonnegotiable, the FLRA ordered the parties to resume negotiations over both the workday provisions addressed in Article 19, section 1 and the compensation provisions addressed in Article 26 and Appendix F. The union, which supports the compensation provisions ordered by the Impasses Panel, contends that the FLRA unreasonably reopened the compensation issues.

The FLRA's decision to link workday and compensation issues in this way was eminently reasonable. For one thing, the compensation of a worker is obviously and inherently linked to the length and other features of his or her workday. Indeed, the union itself took this position. Before the FLRA, it argued that "duty hours and pay rates are not severable," and it thus asked the FLRA "not to direct the parties to implement the pay rates recommended by the Factfinder" if it were to hold that "the language of Article 19, concerning the length of the at-school duty day, is not enforceable." J.A. 268–69. The FLRA sensibly afforded the remedy requested by the union.

The union contends that the FLRA misunderstood its request, which it now says was to reopen compensation issues only if section 1(a) were found unenforceable insofar as it set an eight-hour workday. But the workday specified in Article 19 consisted of seven hours at school, as required by section 1(a), and one additional hour of "preparation and professional tasks," as set forth in section 1(b). Because the union did not fairly present its current position to the FLRA, we cannot consider it. 5 U.S.C. § 7123(c); *see Nat'l Treasury Emps. Union v. FLRA*, 754 F.3d 1031, 1040 (D.C. Cir. 2014).

Though we find that the FLRA's choice of remedy was reasonable, our holding is confined to the circumstances presently before us. Nothing we say here prejudges the options available to the FLRA if it were to conclude on remand that the disputed workday provisions are negotiable.[1]

---

[1] Because the FLRA permissibly ordered the parties to resume bargaining over the compensation provisions, we uphold its denial of the union's request for interest on back pay. Until the parties agree to specific compensation provisions, the agency does not owe the teachers a specific amount of back pay, so there is no way to calculate interest.

IV

The FLRA further held that the Impasses Panel exceeded its authority by ordering the parties to adopt an entire collective-bargaining agreement, including scores of provisions that the parties had tentatively agreed to before the union sought help from the Panel. The union contends that the agency failed to preserve this issue before the Impasses Panel and that the FLRA decided it incorrectly on the merits.

On the forfeiture point, we hold that the FLRA permissibly considered the agency's objection. No statute or regulation prohibits the FLRA from considering issues that were not raised before the Impasses Panel. Moreover, the dispute here implicates the power of the Impasses Panel, which Congress authorized to act only in the event of a "negotiation impasse." 5 U.S.C. § 7119(b). And the Statute constitutes the Impasses Panel as a subordinate entity within the FLRA, *id.* § 7119(c), which has "leadership in establishing policies and guidance relating to matters" involving federal-sector collective bargaining, *id.* § 7105(a)(1). The union notes that parties generally must preserve arguments before agencies in order to raise them in court. *See*, *e.g.*, *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36–38 (1952). True enough, but that rule helps channel issues to the agencies entrusted with primary responsibility for the subject at issue. It does not restrict agencies in deciding how to manage their own components.

On the merits, we deferentially review the Authority's decision that the Impasses Panel lacked authority to order compliance with previously reached agreements. *See Nat'l Ass'n of Gov't Emps., Local R7-23 v. FLRA*, 893 F.2d 380, 382 (D.C. Cir. 1990); *Nat'l Treasury Emps. Union v. FLRA*, 848

F.2d 1273, 1278 (D.C. Cir. 1988). We conclude that the Authority's determination in this case was reasonable.

The Statute established the Impasses Panel "to provide assistance in resolving negotiation impasses." 5 U.S.C. § 7119(c)(1). Implementing regulations define an "impasse" as the "point in the negotiation of conditions of employment at which the parties are unable to reach agreement" despite efforts to do so voluntarily. 5 C.F.R. § 2470.2(e). The regulations require the Impasses Panel to "[d]ecline to assert jurisdiction in the event that it finds that no impasse exists." *Id.* § 2471.6(a)(1).

In this case, the FLRA defined the relevant impasse as limited to the specific provisions on which the parties could not agree. 71 F.L.R.A. at 134. That was consistent with how the union itself had framed the dispute. In seeking assistance from the Impasses Panel, the union did not suggest any overarching impasse encompassing the many provisions that the parties had already tentatively agreed to. To the contrary, it claimed that the parties had "reached impasse on 26 sections of 14 articles" of the 36-article agreement, S.A. 3, and it identified those specific provisions by article and section number, *id.* at 3–20. We note that the Impasses Panel could have considered the agreed-upon provisions if the parties had presented them as part of the impasse. *See* 5 U.S.C. § 7119(c)(5)(A) (Impasses Panel "shall promptly investigate any impasse presented to it"); *Int'l Org. of Masters, Mates & Pilots*, 36 F.L.R.A. 555, 561–62 (1990). But given the case as presented to it, the FLRA reasonably concluded that the Impasses Panel lacked jurisdiction over the tentatively agreed-to provisions.

The union contends that the Impasses Panel permissibly resolved an overall impasse encompassing the entire agreement. But neither case cited by the union supports its

position. In *National Aeronautics & Space Administration*, 12 F.L.R.A. 480 (1983), the disputed matter involved a specific grievance procedure that the parties had presented to the panel for resolution. *See id.* at 497. In *Masters, Mates & Pilots*, both parties described the impasse as encompassing the entire agreement, including provisions tentatively agreed to. *See* 36 F.L.R.A. at 561–62. Here, in contrast, the union asked the Impasses Panel for help to address specific provisions only, and the agency never suggested that the impasse extended to the entire agreement.

Finally, the union contends that even if the Impasses Panel could not address the provisions to which the parties had tentatively agreed, the parties' ground rules nonetheless prohibited their renegotiation. Because the union failed to raise this argument before the FLRA, it is not properly before us. 5 U.S.C. § 7123(c).

## V

For these reasons, we set aside the FLRA's determination that Article 19, section 1(b) of the parties' agreement is nonnegotiable. In all other respects, we deny the petition for review. We remand the case for further proceedings consistent with this opinion.

*So ordered.*